IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NUANCE COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1484-MN-SRF |
| | ) | |
| MMODAL LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this patent infringement action is plaintiff and counterclaim defendant Nuance Communications, Inc.'s ("Nuance") motion to dismiss the amended counterclaims filed by defendant and counterclaim plaintiff MModal LLC ("MModal"). (D.I. 48) For the following reasons, I recommend that the court deny Nuance's motion to dismiss.

### II. BACKGROUND

Nuance designs and provides voice recognition and transcription technologies for businesses and individuals around the world, and its products include Dragon Medical, PowerScribe, eScription, EditScript, and Velocity. (D.I. 1 at ¶ 1) Nuance is the owner by assignment of United States Patent Nos. 7,379,946 ("the '946 patent"), 6,766,295 ("the '295 patent"), 6,999,933 ("the '933 patent"), and 8,117,034 ("the '034 patent") (collectively, the "Asserted Patents").[1] (*Id.* at ¶¶ 12-17)

Defendant MModal is a privately-held limited liability corporation. (*Id.* at ¶ 4) In the complaint filed on October 23, 2017, Nuance accuses MModal of infringing the Asserted Patents

---

[1] On September 11, 2018, the parties stipulated to dismiss the claims and counterclaims pertaining to United States Patent Nos. 9,564,126 ("the '126 patent") and 6,308,158 ("the '158 patent"). (D.I. 93) The court entered an order dismissing the claims and counterclaims on the same date. (D.I. 95)

by providing products under the M*Modal Fluency and M*MODAL CDI solutions umbrella brands that use voice capture and recognition technology for Computer-Assisted Physician Documentation ("CAPD") and Clinical Documentation Improvement ("CDI"). (*Id.* at ¶ 18) Specifically, Nuance identifies the following allegedly infringing products: Fluency Direct, Fluency for Transcription, Fluency for Imaging, Fluency Flex, Fluency Mobile, CDI Assess, CDI Collaborate, CDI Engage, and reasonably similar products ("the Accused CAPD Products and Services"). (*Id.*)

On January 30, 2018, Nuance filed a motion to dismiss MModal's counterclaims. (D.I. 30) MModal responded by filing an amended answer and counterclaims on February 20, 2018. (D.I. 41) MModal's amended counterclaims include two declaratory judgment counterclaims for declarations of non-infringement and invalidity, as well as two state-law tort counterclaims for abuse of process and unfair competition. (*Id.*) Nuance filed a motion to dismiss MModal's state law counterclaims on March 6, 2018. (D.I. 48)

On February 28, 2018, MModal Services Ltd. commenced a lawsuit against Nuance in the Northern District of Georgia, asserting causes of action for infringement of four patents. (D.I. 49 at 1)

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Idenix Pharms., Inc. v.*

*Gilead Scis., Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[2] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. ANALYSIS

### A. *Noerr-Pennington* immunity

"*Noerr-Pennington* provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Immunity under the *Noerr-Pennington* doctrine extends to business torts due to the doctrine's foundation on a First Amendment right of petition. *IGT v. Bally Gaming Int'l Inc.*, C.A. No. 06-282-SLR, 2010 WL 1727388, at *2 (D. Del. Apr. 28, 2010) (citing *Cal. Motor Transp.*, 404 U.S. at 510; *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999)); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 324 (D. Del. 2004).

The *Noerr-Pennington* doctrine is not absolute, and it can be overcome by application of the "sham exception," which applies if the lawsuit is "a mere sham to cover what is actually

nothing more than an attempt to interfere directly with business relationships of a competitor." *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991). To determine whether the sham exception applies, the court must first determine whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, then the suit does not qualify as sham litigation and is immunized under the *Noerr-Pennington* doctrine." *Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 316 (D. Del. 2010). If the challenged litigation is objectively meritless, the court must evaluate the subjective second prong of the sham litigation test to decide "whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *Id.* at 60-61 (quoting *Noerr*, 365 U.S. at 144).

In support of its motion to dismiss, Nuance alleges that MModal's counterclaims for abuse of process and unfair competition in its amended answer must be dismissed for failure to state a claim because the *Noerr-Pennington* doctrine immunizes Nuance against these claims, and MModal has not adequately alleged that an exception to the *Noerr-Pennington* doctrine applies. (D.I. 49 at 4) Specifically, Nuance contends that the amended counterclaims do not allege facts plausibly supporting MModal's contention that Nuance's patent infringement action is objectively baseless. (*Id.* at 6-7) According to Nuance, failing to dismiss MModal's counterclaims for abuse of process and unfair competition "would eviscerate the First Amendment right to petition the government." (*Id.* at 7)

5

In response, MModal contends that the *Noerr-Pennington* doctrine does not apply to its counterclaims for abuse of process and unfair competition because those counterclaims are based on conduct relating to Nuance's activities outside of bringing the lawsuit. (D.I. 51 at 4) Specifically, MModal alleges that Nuance disseminated a false press release to MModal's customers and the public after filing this suit, and Nuance threatened to sue MModal to gain economic leverage after incurring large losses due to a June 2017 malware attack. (*Id.* at 4-5) Moreover, MModal contends that even if *Noerr-Pennington* applies, MModal's counterclaims set forth sufficient facts to establish the objective baselessness of Nuance's infringement allegations under the sham litigation exception. (*Id.* at 5-6)

Viewing the pleading in the light most favorable to MModal, I recommend that the court deny Nuance's motion to dismiss MModal's counterclaims for abuse of process and unfair competition under the *Noerr-Pennington* doctrine because the scope of Nuance's conduct alleged in the counterclaims goes beyond actions incidental to the litigation. The court finds persuasive the supplemental authority submitted by MModal in *Arista Networks, Inc. v. Cisco Systems Inc.* (D.I. 71, Ex. A) In *Arista Networks*, the defendant argued that public statements and correspondence with customers regarding the status of the litigation, including blog posts and press releases, fell within the scope of the *Noerr-Pennington* doctrine because they were "conduct incidental" to the litigation. (*Id.* at 20) The Northern District of California rejected the defendant's position, concluding that such communications did not trigger protection under the *Noerr-Pennington* doctrine because they did not relate to the prosecution of the litigation, and instead merely relayed the status of the litigation and the defendant's intellectual property rights. (*Id.* at 21) The court held that blog posts and press releases providing status updates regarding the litigation did not fall within the protection of the Petition Clause of the First Amendment

6

because they "had little relevance to [the defendant's] ability to pursue its . . . lawsuit. In other words, those communications were not in 'furtherance of or incidental' to the . . . litigation." (*Id.* at 21-22 (quoting *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, 2015 WL 12941890, at * (N.D. Cal. Apr. 7, 2015))).

In the present case, MModal's counterclaims for abuse of process and unfair competition are based in large part on Nuance's dissemination of a press release after the filing of the litigation and Nuance's subsequent campaign to use the press release discussing the suit to propose new pricing arrangements for MModal's customers. (D.I. 41 at 57, 59-61, 64) Specifically, Nuance's counterclaim for abuse of process alleges that "the same day that Nuance's suit was filed against MMLLC, a representative from Nuance approached the hospital with the press release about the suit and MMLLC's alleged violation of Nuance's patents, and proposed new pricing for Nuance's solutions for the hospital." (*Id.* at 60, ¶ 36) Assuming the truth of these representations, as the court must on a Rule 12(b)(6) motion, "a reasonable jury could find that [Nuance] raised the specter" of its lawsuit "to persuade customers to abandon [Nuance's] competitors." (D.I. 71, Ex. A at 22) Nuance's conduct in disseminating the press release does not give rise to a concern that a lack of protection under *Noerr-Pennington* would restrict the right of access to the courts under the First Amendment. (*Id.* at 21-22 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006)).

The *Arista Networks* court distinguished these circumstances from pre-suit settlement demands, which enjoy *Noerr-Pennington* immunity because "although the demand 'letters [a]re not themselves petitions, the Petition Clause may nevertheless preclude burdening them so as to preserve the breathing space required for the effective exercise of the rights it protects.'" (D.I. 71, Ex. A at 21 (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006)). This

7

outcome is not inconsistent with authority from this district. In *Magnetar Technologies Corp. v. Six Flags Theme Parks Inc.*, the court noted that *Noerr-Pennington* immunity extends "to actions incidental to litigation, such as prelitigation letters." C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011). Because the challenged counterclaim in *Magnetar* was "primarily based on Plaintiffs' actions in bringing this patent infringement lawsuit and threatening similar legal action against others," the court concluded that the defendants' counterclaim was barred by the *Noerr-Pennington* doctrine, absent an applicable exception to the doctrine. *Id.* Unlike the circumstances presently before the court, the *Magnetar* court was not confronted with the dissemination of a press release. *Noerr-Pennington* does not provide absolute immunity where, as here, MModal pleads additional market manipulation conduct as illustrated by Nuance's press release.

Even if the court were to determine that Nuance's alleged conduct falls within the scope of the *Noerr-Pennington* doctrine, I recommend that the court deny Nuance's motion to dismiss under the doctrine at this stage of the proceedings. *See FTC v. Shire ViroPharma Inc.*, C.A. No. 17-131-RGA, 2018 WL1401329, at *7 (D. Del. Mar. 20, 2018) (holding that "whether ViroPharma's activity was in fact a sham under either standard is a factual inquiry, which cannot be resolved at the motion to dismiss stage."). MModal pleads sufficient facts, taken as true, to show the objective baselessness of Nuance's infringement case under the sham litigation exception to the *Noerr-Pennington* doctrine. Specifically, MModal's non-infringement allegations detail elements of the Asserted Patents that are not met in the accused products. (D.I. 41 at 18-22) MModal also identifies a claim construction ruling from the District of Massachusetts rejecting a construction advanced by Nuance in the present litigation in support of its infringement allegations. (*Id.* at 20) With respect to invalidity, MModal identifies numerous

specific prior art references under §§ 102 and 103 purporting to show that Nuance has no basis for alleging the Asserted Patents are valid and enforceable. (*Id.* at 26-29; 33-42) Consequently, MModal meets the standard of plausibility required at the 12(b)(6) stage. *See Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.*, 118 F. Supp. 3d 646, 657 (D.N.J. 2015) (holding that "the inquiry into whether [the plaintiff] maintains in this action 'objectively and subjectively baseless' infringement claims turns upon issues of reasonableness and intent-issues which are premature to consider upon the present record.").

The cases relied upon by Nuance in support of its motion to dismiss are distinguishable from the present circumstances. In *Magnetar*, the court observed that the defendants generally asserted that the plaintiffs pursued the litigation and threatened litigation against others in bad faith to impair the defendants' competitive capacity. 2011 WL 678707, at *3. The counterclaim did not contain facts demonstrating that the litigation was objectively baseless, and the defendants offered no factual support for their allegations that the action was motivated by bad faith or involved false or fraudulent communications. *Id.*; *see also Simon Property Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 511 (W.D. Pa. 2010) (finding allegations that the plaintiff contacted the U.S. Attorney's Office without cause and filed a baseless lawsuit with the intent of inhibiting competition insufficient under *Twombly* to establish a "sham litigation" counterclaim). In *Varentec, Inc. v. Gridco, Inc.*, the court dismissed the sham litigation counterclaim because the defendant failed to allege that one of the three asserted patents was objectively baseless. C.A. No. 16-217-RGA-MPT, 2017 WL 2438846, at *11 (D. Del. June 6, 2017). In contrast, MModal offers specific facts in support of its non-infringement and invalidity contentions for each of the remaining Asserted Patents in the present case.

9

MModal also pleads sufficient facts demonstrating subjective baselessness at this stage of the proceedings. Specifically, the pleading contains allegations regarding Nuance's history of bringing patent infringement suits against its market competitors as a predicate to acquiring them (D.I. 41 at 44-47), its previous threats to sue MModal as retribution for a failure to sell (*id.* at 47-48), the June 2017 malware incident that harmed Nuance's customer relationships (*id.* at 48), the filing of this lawsuit, and Nuance's dissemination of the misleading press release falsely accusing all MModal products of infringing Nuance's patents (*id.* at 49-50, 59-62). These factual allegations, taken as true, adequately suggest that Nuance's lawsuit is, at its core, "an attempt to interfere directly with the business relationship of a competitor." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

For these reasons, I recommend that the court deny Nuance's motion to dismiss MModal's pleading under the *Noerr-Pennington* doctrine.

### B. Preemption

The law of the Federal Circuit applies in determining whether the patent laws preempt a state-law tort claim. *See Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008); *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999). The Federal Circuit has held that federal patent law preempts the imposition of state-law liability for a patentholder's communications asserting alleged infringement unless those communications were made in bad faith. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *rev'd on other grounds, Midwest Indus.*, 175 F.3d at 1359.

"Bad faith includes separate objective and subjective components." *Dominant Semiconductors*, 524 F.3d at 1260 (citing *Mikohn Gaming*, 165 F.3d at 897). "The objective component requires a showing that the infringement allegations are objectively baseless." *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (internal quotations omitted). Infringement allegations are objectively baseless if "no reasonable litigant could realistically expect to secure favorable relief." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993). Therefore, the plaintiff seeking to prove bad faith must "prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose." *Id.* The subjective component relates to a showing that the patentee demonstrated subjective bad faith in enforcing the patent. *800 Adept, Inc.*, 539 F.3d at 1370.

In support of its motion to dismiss, Nuance alleges that MModal's state law counterclaims are preempted by federal law because they are unsupported by factual allegations creating a plausible inference that Nuance's allegations are objectively unreasonable. (D.I. 49 at 12-14) In response, MModal contends that its counterclaims contain sufficient factual allegations supporting objective bad faith for the reasons previously discussed. (D.I. 51 at 16)

I recommend that the court deny Nuance's motion to dismiss MModal's state law counterclaims on the basis of preemption. For the reasons previously stated at § IV.A, *supra*, MModal has adequately pleaded factual allegations in support of objective bad faith at this stage of the proceedings. Nuance concedes that the allegations at paragraphs 22 and 50 of the counterclaims adequately allege that Nuance had subjectively improper motives in commencing the patent infringement action. (D.I. 49 at 12)

11

## C. Abuse of Process

"To establish a claim for abuse of process, the defendant must prove that the plaintiff had an 'ulterior purpose' and committed 'a willful act in the use of the process that is not proper in the regular conduct of the proceedings.'" *Bayer AG v. Sony Elecs., Inc.*, 229 F. Supp. 2d 332, 368 (D. Del. 2009). "[S]ome definite act or threat, not consistent with process, or designed for an illegitimate objective in the use of process, is required." *Chase Bank USA, N.A. v. Hess*, C.A. No. 08-121-LPS-MPT, 2013 WL 867542, at *4 (D. Del. Mar. 7, 2013) (citing *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. Ct. 1983)).

According to Nuance, MModal's counterclaim for abuse of process should be dismissed because it is based on Nuance's allegedly improper filing of its patent infringement action, which is impermissible under Delaware law. (D.I. 49 at 16) Nuance contends that MModal's abuse of process counterclaim is devoid of allegations suggesting that Nuance engaged in alleged activities after the filing of the complaint, or that the lawsuit is objectively baseless. (*Id.* at 17-18)

In response, MModal argues that an abuse of process claim can be based on the initiation of a sham lawsuit, especially when it is followed by post-filing activities showing an ulterior bad faith purpose. (D.I. 51 at 18) MModal contends that its abuse of process counterclaim alleges that Nuance disseminated a misleading press release regarding the lawsuit that damaged MModal's relationship with current and prospective customers, in addition to filing a sham litigation. (*Id.* at 19)

I recommend that the court deny Nuance's motion to dismiss MModal's counterclaim for abuse of process. As previously discussed at § IV.A, *supra*, the determination of whether Nuance's activity was a sham is a factual inquiry to be considered at a later stage of the

proceedings, and dismissal at this stage is not warranted on that basis. *See FTC v. Shire ViroPharma Inc.*, C.A. No. 17-131-RGA, 2018 WL1401329, at *7 (D. Del. Mar. 20, 2018) (holding that "whether ViroPharma's activity was in fact a sham under either standard is a factual inquiry, which cannot be resolved at the motion to dismiss stage."). Moreover, MModal's counterclaim for abuse of process sets forth the requisite "overt act done in addition to the initiating of the lawsuit." *See Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at *3 (Del. Super. Ct. July 1, 2016). Specifically, the abuse of process counterclaim establishes that Nuance disseminated the misleading press release which was intended to damage MModal's relationships with current and prospective clients. (D.I. 41 at 59-62)

In this regard, MModal's abuse of process counterclaim is comparable to the abuse of process claim at issue in *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, C.A. No. 16-403-LPS-CJB, 2017 WL 3821107 (D. Del. Aug. 31, 2017) (recommending denial of the plaintiff's motion to dismiss the abuse of process counterclaim). In *PhishMe*, the defendant's allegations pled that the plaintiff disseminated a press release and social media posts to the defendant's customers after the commencement of the litigation in an effort to gain an unfair advantage over the defendant in the marketplace. *Id.* at *9. Similarly, MModal pleads that Nuance disseminated a press release containing false accusations of infringement, and contacted MModal's existing and potential customers in an effort to gain competitive advantage. (D.I. 41 at 59-62) For these reasons, I recommend that the court deny Nuance's motion to dismiss MModal's abuse of process counterclaim.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the court deny Nuance's motion to dismiss. (D.I. 48)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 27, 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE