# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., | ) |
| Plaintiff, | ) ) |
| | ) C.A. No. 17-1484-MN |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| MMODAL LLC, | ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING DEFENDANT'S PARTIAL MOTION TO DISMISS

OF COUNSEL:

David J. Lender
Anish R. Desai
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Christopher T. Marando
Stephen Bosco
Megan H. Wantland
WEIL GOTSHAL & MANGES, LLP
2001 M Street, NW Suite 600
Washington, DC 20036
Tel: (202) 682-7000

Amanda Branch
WEIL GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000

David Greenbaum
NUANCE COMMUNICATIONS, INC.
1111 Macarthur Blvd.
Mahwah, NJ 07430
Tel: (201) 252-9100

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
obyrne@potteranderson.com

*Attorneys for Plaintiff*
*Nuance Communications Inc.*

Dated: December 28, 2018
6036833 / 43964

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. LEGAL STANDARDS ............................................................................................................. 1

III. OBJECTIONS........................................................................................................................... 2

    A. THE MAGISTRATE JUDGE OVERLOOKED FEATURES OF THE INVENTION AND MISAPPLIED CASE LAW IN CONCLUDING THAT THE CLAIMS OF THE 946 PATENT ARE DIRECTED TO AN ABSTRACT IDEA.................................................................. 2

    B. THE RECORD DOES NOT SUPPORT A FACTUAL FINDING THAT THE 946 PATENT AS A WHOLE IS DIRECTED TO WELL-KNOWN, CONVENTIONAL SUBJECT MATTER ................................................................................................................ 7

IV. CONCLUSION........................................................................................................................ 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................................3, 6

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018)..................................................................................3, 4

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................................................................7, 8

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...............................................................................1, 7, 9

*Bilski v. Kappos*,
    561 U.S. 593 (2010).........................................................................................................4

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...............................................................................3, 4, 6

*Finjan Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)..................................................................................5, 6

*Socket Mobile, Inc. v. Cognex Corp.*,
    C.A. No. 17-156-VAC-MPT, 2017 WL 3575582 (D. Del. Aug. 18, 2017) ..............................8

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)..................................................................................4, 7

**Statutes**

35 U.S.C. § 101..................................................................................................................1, 3

**Rules**

Fed. R. Civ P. 12(b)(6).............................................................................................................1

Fed. R. Civ. P. 72....................................................................................................................1

## I. PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 72, Nuance hereby objects to Section IV(A) of Magistrate Judge Fallon's Report and Recommendation (D.I. 131, hereinafter the "Report"), which relates to whether Defendant's Partial Motion to Dismiss (D.I. 20) should be granted as to U.S. Pat. No 7,379,946 (the "946 Patent"). For the reasons set forth below, Nuance asks the Court to reject the Report's findings as to the 946 Patent, and deny Defendant's Motion to Dismiss.

## II. LEGAL STANDARDS

Nuance objects to the Report's general statements of the relevant legal standards only to the extent it neglected to mention that any fact pertinent to invalidity under 35 U.S.C. § 101, including whether a claimed feature "is well-understood, routine and conventional to a skilled artisan in the relevant field," must be proven by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."). Given the Court's familiarity with the legal standards pertaining to both motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Section 101, Nuance will not further restate the relevant law.

### III.     OBJECTIONS

**A.    The Magistrate Judge Overlooked Features of the Invention and Misapplied Case Law in Concluding That the Claims of the 946 Patent Are Directed to an Abstract Idea**

The Report's analysis with respect to Step One of the *Alice* inquiry rests on several key errors.  First, the Report oversimplifies the claims in concluding that they are directed to "the abstract idea of receiving data, recognizing words using well-known ASR technology, and storing the data in appropriate fields of a report template." Report at 16-17.  In particular, the Report's characterization of the method steps of the invention claimed in the '946 Patent as merely "recognizing words using well-known ASR technology" betrays a fundamental misunderstanding of the nature of the claimed invention.

Indeed, the inability of then-known ASR systems[1] (and other legacy data collection methods) to "extract[] all of the relevant information" from clinical dictations is precisely what the inventors of the 946 Patent sought to remedy through the new method they described and claimed. 946 Patent at 2:28-29.  As set forth in Nuance's Answering Brief in opposition to Defendant's partial motion to dismiss, that method includes a series of concrete steps for processing input data to identify medically significant "latent information" within the data stream, including the steps of "bounding the relevant portion of the input data stream, identifying a predetermined class of information, and normalizing the relevant portion of the input data stream." D.I. 28 at 6 (quoting 946 Patent at 16:19-23).  Further, as Nuance's counsel highlighted during oral argument, the patented method uses the latent information identified through the foregoing series of processing steps to activate an appropriate report template.  Mot. Hearing Tr. at 40:6-16; *see also* 946 Patent

---

[1] All statements herein regarding knowledge of the art refers to the knowledge possessed by persons having ordinary skill in the art as of the March 31, 2004 effective filing date of the 946 Patent.

at 16:24-25. Systems that merely "recogniz[e] words," in contrast, cannot distinguish between inconsequential "generic data"—which may include "comments about, for example, how the patient's son's baseball team is doing" (946 Patent at 7:4-6)—and medically significant latent information, much less activate a template on the basis of such latent information, leading to poor quality, inefficient reporting. Accordingly, in characterizing the 946 Patent as directed to mere word recognition, the Report overlooked the collection of steps in the claims that represent an advance over the prior art. Such oversimplification of the claims "all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Second, the Report's conclusion as to the 946 Patent at Step One of the *Alice*-inquiry hinges on an erroneous application of Federal Circuit precedent. Specifically, the Report acknowledges that the specification of the 946 Patent describes the invention as an improvement to computer functionality:"[t]he specification explains that the invention improves the functioning of a computer by eliminating the need for complex, inefficient software or manual data input to process specialized medical information." Report at 14. That should have been the end of the analysis since it is well-settled that claims directed to improvements to the functioning of computers are patentable. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) ('We have repeatedly held that inventions which are directed to improvements in the functioning and operation of the computer are patent eligible."); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016) (contrasting the patentable claims at issue with those found unpatentable in other cases on the ground that "the claims here are directed to an improvement in the functioning of a computer"); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018) (finding that claims "directed to a solution to a computer-functionality problem…pass[]

3

muster under *Alice* step one," such that court "need not…apply step two of the *Alice* inquiry"). This is particularly true here given that the procedural posture mandates that "all factual inferences must be drawn in favor of the non-moving party." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017).

Notwithstanding the foregoing case law, the Report proceeds to find that the claims are nonetheless directed to an abstract idea on the grounds that the "focus of the claims in this case is not on a specific improved ***structure*** to enhance computer functionality," and because of the purported absence in the claims of an "identification of a specific improvement in the capability of the claimed computing devices." Report at 14 (emphasis added); *see also id.* at 14 (referring to "claimed computer components"). But the claims at issue are method claims, and there is no requirement that they include physical structure. Thus the Report's reasoning appears to hinge on implicit application of the "machine-or-transformation" test that the Supreme Court and Federal Circuit have rejected. *See Bilski v. Kappos,* 561 U.S. 593, 604 (2010); *Enfish*, 822 F.3d at 1339 ("[T]hat the improvement is not defined by reference to 'physical' components does not doom the claims. To hold otherwise risks resurrecting a bright-line machine-or-transformation test, or creating a categorical ban on software patents."); *Ancora*, 908 F.3d at 1347 ("Computers are improved not only through changes in hardware; software can make non-abstract improvements to computer technology." (citation and brackets omitted)).

The Report further asserts that "the '946 patent does not specify how the claimed computer components achieve" the novel and efficient natural language processing described in the specification (Report at 14), but this characterization is not accurate. On the contrary, the claims themselves explain how the processing occurs: through the steps of "identifying a relevant portion of the input data stream, bounding the relevant portion of the input data stream, identifying a

4

predetermined class of information, and normalizing the relevant portion of the input data stream." 946 Patent at 16:19-24.  In other words, like the claims the Federal Circuit held were non-abstract in *Finjan Inc. v. Blue Coat Systems, Inc.*, "the claims recite more than a mere result"—they include "specific steps…that accomplish the desired result."  879 F.3d 1299, 1305 (Fed. Cir. 2018).

The Magistrate Judge's efforts to distinguish *Finjan* are unavailing.  *See* Report at 16.  As the side-by-side comparison below demonstrates, the representative claim at issue in *Finjan* is **less** specific than claim 1 of the 946 Patent regarding how the novel aspects of the claim are achieved.

| **946 Patent Claim 1** | ***Finjan* patent, claim 1**[2] |
|---|---|
| 1. A computer implemented method for generating a report that includes latent information, comprising;<br><br>receiving an input data stream;<br><br>performing one of normalization, validation, and extraction of the input data stream;<br><br>processing the input data stream to identify latent information within the data stream that is required for generation of a particular report, wherein said processing of the input data stream to identify latent information comprises of identifying a relevant portion of the input data stream, bounding the relevant portion of the input data stream, identifying a predetermined class of information, and normalizing the relevant portion of the input data stream;<br><br>activating a relevant report template based on the said identified latent information;<br><br>populating said template with template-specified data; | 1. A method comprising:<br><br>receiving by an inspector a Downloadable;<br><br>generating by the inspector a first Downloadable security profile that identifies suspicious code in the received Downloadable; and<br><br>linking by the inspector the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients. |

---

[2] The patent challenged in *Finjan* is U.S. Patent No. 6,154,844.

5

| **946 Patent Claim 1** | ***Finjan* patent, claim 1**[2] |
|---|---|
| processing the template-specified data to generate a report. | |

In particular, whereas the 946 Patent provides a series of specific, concrete steps laying out how the "input data stream" is processed to identify latent information, the *Finjan* patent says nothing regarding how the "inspector" generates a "first Downloadable security profile," nor does it include any details regarding how the profile "identifies suspicious code." The claim is similarly silent as to how the "linking" step occurs.[3] In short, if the *Finjan* claims recite "specific steps to accomplish the desired result," as the Report and the Federal Circuit agree is the case (*see* Report at 16 (citing *Finjan*, 879 F.3d at 1303-05)), then the more detailed 946 Patent claims at issue here indisputably do as well. *See also* Ex. 1, Mot. Hearing Tr. at 42:21-45:2.

Further, the benefits that the 946 Patent's specification asserts are attributable to the concrete processing steps recited in the claims—*i.e.*, increased efficiency and reduced costs, memory, and processing power requirements (946 Patent at 2:27-39; 4:12-51)—are precisely the types of advantages that the Federal Circuit has recognized are associated with inventive improvements to computer functionality. *See Enfish*, 822 F.3d at 1337 ("Moreover, our conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."); *Aatrix Software,* 882 F.3d at 1127 (accepting as true complaint allegations that "the claimed invention 'saved storage space' and "uses less memory, results in faster processing speed, and

---

[3] Although the Federal Circuit in *Finjan* applied certain district court claim constructions in its analysis (879 F.3d at 1304), none of them pertain to *how* the generating, identifying, and linking steps are carried out.

reduces the risk of thrashing which makes the computer process forms more efficiently"); *Visual Memory*, 867 F.3d at 1259 (highlighting the performance advantages of the claimed process over the "costly and inefficient" prior art). In other words, the specification of the 946 Patent explains that claimed invention processes input information in a more efficient and less expensive way than prior art systems for capturing medical information, and the claims recite concrete steps for how that processing is performed. In concluding that the 946 claims were directed to an abstract idea, the Magistrate Judge failed to properly evaluate claim limitations specifying how the patented method improved computer systems by processing input data in a new way, and effectively rejected the specification's statements of fact regarding the advantages of the invention over the prior art. This was error. *See Visual Memory*, 867 F.3d at 1262 ("[A]ll factual inferences drawn from the specification must be weighed in favor of …the non-moving party.").

### B. The Record Does Not Support a Factual Finding that the 946 Patent as a Whole is Directed to Well-Known, Conventional Subject Matter

The Report's analysis at Step Two of the *Alice* test is also erroneous. As an initial matter, throughout its analysis, the Magistrate Judge appears to have improperly placed the burden on the patentee to prove that the 946 Patent claims include an inventive concept. *See* Report at 17. This turns the procedural posture on its head. As the moving party, MModal has the burden to prove, by clear and convincing evidence and with all relevant inferences construed against it, that the claims of the 946 Patent lack an inventive concept and are instead directed to "well-understood, routine and conventional subject matter." *Berkheimer*, 881 F.3d at 1368; *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (finding claims patentable at Step Two when "construed in favor of [non-movant] as they must be in this procedural posture"); *Visual Memory*, 867 F.3d at 1262; Mot. Hearing Tr. at 38:5-10.

7

As Nuance's Answering Brief established, MModal failed to meet this burden because it neglected to even address the "bounding" and "normalizing" limitations that are core to the improvement that the 946 Patent made to the prior art. D.I. 28 at 6, 8. It was only in its reply brief, after Nuance has exposed MModal's failure to make even a threshold showing that the bounding and normalizing limitations were well-known and conventional, that MModal raised the argument that the bounding and normalizing limitations were some somehow insufficient because they did not provide enough specificity as to "*how* the bounding and normalizing steps…alter th[e] system." D.I. 36 at 5-6 (emphasis in original). It is well-settled, however, that arguments made for the first time in a reply brief are waived. *See Socket Mobile, Inc. v. Cognex Corp.*, C.A. No. 17-156-VAC-MPT, 2017 WL 3575582, at *5 (D. Del. Aug. 18, 2017) ("The Third Circuit has consistently held new arguments in reply briefs are prejudicial and unfair, because a party cannot respond. Positions asserted for the first time in a reply brief are deemed to be waived."). The Magistrate Judge thus erred by crediting arguments that MModal made for the first time in its reply brief and effectively placing the burden on Nuance to prove the patentability the 946 Patent's claims.

The Magistrate Judge's analysis regarding the extent to which the claimed subject matter was well-known and conventional is also erroneous. The Magistrate Judge's conclusion that the 946 Patent claims were non-inventive at Step Two hinged on statements in the specification suggesting that the "bounding" and "normalizing" limitations "were understood in the art." Report at 18. The Federal Circuit has made clear, however, that establishing that a claim is directed to "well-understood, routine and conventional" subject matter requires more than mere evidence that the subject matter was known in the prior art. *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art.

8

As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *Berkheimer*, 881 F.3d at 1369 ("Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").

Mere knowledge of the bounding and normalizing limitations, however, is all that the evidence of record suggests. The Report focuses on the fact that the specification cites a pending provisional application as providing exemplary normalization methods (Report at 18) but this application was filed on Feb. 26, 2004, only a month before the priority date of the 946 Patent. 946 Patent at 13:37-44. This suggests that the principal normalization methods contemplated in the patent were *not* well-known or conventional in 2004—otherwise they would not have been the subject of a patent application asserting that they were novel and non-obvious. The other specification citations in the Report, moreover, merely indicate that other methods of normalization and bounding were known in the art, which as set forth above is insufficient as a matter of a law to establish that the claimed subject matter is well-understood, routine, and conventional. And nothing in the specification suggests that it was previously known—much less well-understood, routine, and conventional—to use normalization and bounding techniques in the specific manner, and for the specific purposes, set forth in the claims.

Further, as Nuance emphasized in its Answering Brief and at the motion hearing, the addition of the bounding and normalizing limitations was central to examiner's conclusion that the 946 Patent claims, as an ordered combination, were novel and non-obvious. D.I. 28 at 6, Ex. A at 5, 8; Mot. Hearing Tr. at 38:23-39:22. The Report, however, failed to substantively address the implications of the examiner's decision to the Step Two analysis, and in particular failed to explain

9

how the examiner's factual finding that these limitations rendered the claimed invention novel and non-obvious can be reconciled with the conclusion that those same limitations were well-understood, routine, and conventional.[4] Given the procedural posture and MModal's obligation to prove invalidity by clear and convincing evidence, this was further error.

## IV. CONCLUSION

For all the reasons set forth above, the Court should decline to adopt the Magistrate Judge's Report as to the 946 Patent, and should deny MModal's Motion to Dismiss with Prejudice.

---

[4] Instead, the Report discussed the examiner's findings only in a footnote to the Step One analysis, and then only to dismiss the file history evidence on the ground that it "does not compel a conclusion that an abstract idea is patent eligible." Report at 10, n. 6. This analysis misses the point. Nuance never suggested that the examiner's conclusion "compels" a conclusion that an abstract idea is patentable. It is, however, evidence that the limitations of the 946 Patent, when considered as an ordered combination, are not in fact well-known or conventional. *See* Mot. Hearing Tr. at 38:23-39:22. Such factual evidence must be considered and construed in Nuance's favor, which the Magistrate Judge failed to do.

|  |  |
|---|---|
| OF COUNSEL: | Respectfully submitted,<br>POTTER ANDERSON & CORROON LLP |
| David J. Lender<br>Anish R. Desai<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000 | By:  */s/ Bindu A. Palapura*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    obyrne@potteranderson.com |
| Christopher T. Marando<br>Stephen Bosco<br>Megan H. Wantland<br>WEIL GOTSHAL & MANGES, LLP<br>2001 M Street, NW Suite 600<br>Washington, DC 20036<br>Tel:  (202) 682-7000 | *Attorneys for Plaintiff*<br>*Nuance Communications Inc.* |

Amanda Branch
WEIL GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel:  (650) 802-3000

David Greenbaum
NUANCE COMMUNICATIONS, INC.
1111 Macarthur Blvd.
Mahwah, NJ 07430
Tel: (201) 252-9100

Dated:  December 28, 2018
6036833 / 43964