IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 17-1484-MN |
| v. ) | |
| ) | |
| MMODAL LLC, ) | |
| ) | |
| Defendant. ) | |

## MMODAL LLC'S OBJECTIONS TO DECEMBER 14, 2018 REPORT AND RECOMMENDATION (D.I. 131)

**OF COUNSEL:**

L. Norwood Jameson
Alison Haddock Hutton
**DUANE MORRIS LLP**
1075 Peachtree Street, NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: (404) 253-6900

Anthony J. Fitzpatrick
Christopher S. Kroon
Michael R. Gottfried
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110
Telephone: (857) 488-4200

David K. Callahan
david.callahan@lw.com
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7694

Kevin C. Wheeler
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-3311

**DUANE MORRIS LLP**

Richard L. Renck (#3893)
rlrenck@duanemorris.com
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 657-4900

*Counsel for Defendant MModal LLC*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................1

II.  STANDARD OF REVIEW ................................................................................................1

III. BACKGROUND OF THE '933 AND '034 PATENTS ......................................................1

IV.  ARGUMENT ......................................................................................................................3

    A.   The '933 and '034 Patents Are Not Directed to an Improved User Interface for Editing Dictation Text .................................................................. 3

        1.   The Tab Patents and *Core Wireless* Patents are not Analogous ........... 3

        2.   The '933 and '034 Patents are Akin to Invalid User Interface Patents ....................................................................................................... 7

        3.   The '933 and '034 Patents' Dependent Claims Are Also Abstract ....... 9

    B.   The '933 and '034 Patents Also Fail *Alice* Step Two .......................................... 9

V.   CONCLUSION ...................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014) .................................................. 6, 9

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ......................................................... 8

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (2018) .................. 1, 3-6

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) ..................... 1, 3-4, 6, 8-9

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ......................... 7-8

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) ............................................. 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ............................ 7

*SAP Am., Inc. v. InvestPic, LLC,* 890 F.3d 1016 (Fed. Cir. 2018) .................................................... 5

**Statutes**

28 U.S.C. § 636(b)(1)(c) .................................................................................................................. 1

35 U.S.C. § 101 .......................................................................................................................... 6, 10

35 U.S.C. § 112, ¶ 2 ........................................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 72(b)(3) ................................................................................................................... 1

I.   **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 72(b)(2) and D. Del. LR 72.1, MModal LLC ("MModal") respectfully objects to Magistrate Judge Fallon's Report and Recommendation (D.I. 131, the "Report" or "R&R"). Specifically, MModal objects to the Report's conclusion that the representative claims of the '933 and '034 Patents are not directed to an abstract idea.

The Report's conclusion errs as to these two patents in three respects. First, the Report reads too much into the claims and determines that they claim specific technological modifications and implementations of the claimed invention, when they do not. This is fatal for the '933 and '034 Patents at *Alice* step 1. Second, the Report analogizes the '933 and '034 Patent claims to claims found non-abstract in *Data Engine* and *Core Wireless* decisions, but the valid *Data Engine* and *Core Wireless* claims included specific and detailed improvements to computer and phone interfaces, unlike the claims of the '933 and '034 Patents. Finally, the Report did not address Federal Circuit precedent concerning alleged user interface improvements which compel a finding that the '933 and '034 Patents are patent-ineligible.

MModal respectfully requests that the Court hold that the asserted claims of the '933 and '034 Patents are invalid for being drawn to non-patentable subject matter.

II.   **STANDARD OF REVIEW**

The Court reviews the Report *de novo,* 28 U.S.C. § 636(b)(1)(c), and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

III.   **BACKGROUND OF THE '933 AND '034 PATENTS**

The '933 and '034 Patents have substantively identical specifications and were filed one day apart. Nuance did not dispute, and the Report correctly found, that independent claim 9 of the

'933 Patent, and independent claim 8 of the '034 Patent (reproduced below), are representative of the remaining asserted claims. (R&R at 20). The Report concluded that the only limitations of claims 9 and 8 not known in the art are the "synchronization of text and audio cursors while the speech recognition device remains in synchronous playback mode." (*Id.* at 21). Those elements are emphasized below.

<u>Claim 9 of the '933 Patent:</u>

A correction method (16) for the correction of incorrect words in text information (ETI) recognized by a speech recognition device (1) from speech information (SD), in which the following method steps are executed:

> reception of the speech information (SD), the associated recognized text information (ETI) and link information (LI), which marks the part of the speech information (SD) at which the word was recognized by the speech recognition device (1) or each word of the recognized text information (ETI);

> allowing a synchronous playback mode, in which, during the acoustic playback of the speech information (SD) the word of the recognized text information (ETI), which word is marked by the link information (LI) for the speech information (SD) just played back is marked synchronously, while the word just marked features the position of an audio cursor (AC);

> editing of the incorrect word with a text cursor (TC) according to the editing information (EI) entered by a user, ***the editing of the incorrect word being possible with the synchronous playback mode activated in the correction device (10).***

<u>Claim 8 of the '034 Patent</u>

A method of assisting in correcting text information recognized by a speech recognition device from speech information, the method comprising:

> receiving the speech information, the text information recognized from the speech information, and link information that associates portions of the text information with portions of the speech information from which the portions of the text information were recognized by the speech recognition device;

> providing an audio cursor for display during acoustic playback of the speech information, the audio cursor highlighting portions of the text information synchronous with the playback of the speech information according to associations provided by the link information such that, when displayed to the user, the audio cursor highlights the portions of the text information as the associated portions of the speech information are being acoustically played back; and

providing a text cursor for display to facilitate editing the text information, the text cursor indicating a position in the text information where at least one edit will be performed upon receiving editing information entered by the user; and

*automatically synchronizing the text cursor and the audio cursor, wherein automatically synchronizing the text cursor and the audio cursor comprises automatically positioning the text cursor at a predetermined position relative to the location of the audio cursor and automatically moving the location of the text cursor synchronous with the movement of the audio cursor during the acoustic playback until an editing operation is performed.*

None of the other claimed elements -- the speech recognition system with correction software, text cursor, audio cursor, and synchronous playback mode utilizing link information – are inventive. (*See, e.g.,* '034 Pat. 1:16-56).

## IV. ARGUMENT

### A. The '933 and '034 Patents Are Not Directed to an Improved User Interface for Editing Dictation Text

#### 1. The Tab Patents and *Core Wireless* Patents are not Analogous

The Report held that the representative claims "are directed to an *improved user interface* for editing text using a speech recognition device" and claim a "specific *technological modification* of synchronized audio and text cursors which allow a user to edit text while synchronous playback mode is activated." (R&R at 21-22 (emphasis added)). This conclusion, which the Report used to equate the '933 and '034 Patent claims to those found valid in *Data Engine v. Google* and *Core Wireless Licensing v. LG Electronics,* was erroneous and should not be adopted.

The patents at issue in *Data Engine* and *Core Wireless* involved improvements to computer and phone interfaces that were described specifically and in detail in the validated claims.[1] For example, the patent-eligible Tab Patents in the *Data Engine* case were directed to and claimed a method of implementing a notebook-tabbed interface which allowed users to easily navigate

---

[1] Charts comparing the representative '933 and '034 Patent claims to those found patent eligible in *Data Engine* and *Core Wireless* are at Appendix A.

3

through three-dimensional electronic spreadsheets. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1003 (Fed. Cir. 2018). Representative method claim 12 of the '259 Patent "recite[d] specific steps detailing the method of navigating through spreadsheet pages within a three-dimensional spreadsheet environment using notebook tabs." *Id.* at 1008.

> The claim requires *displaying on a screen display a row of spreadsheet page identifiers* along one side of the first spreadsheet page, with each spreadsheet page identifier *being a notebook tab*. The claim requires *at least one user-settable identifying character to label the notebook tab* and describes *navigating through the various spreadsheet pages through selection of the notebook tabs*. The claim further requires *a formula that uses the identifying character to operate on information spread* between different spreadsheet pages that are identified by their tabs. The claimed method does not recite the *idea* of navigating through spreadsheet pages using buttons or a generic method of labeling and organizing spreadsheets. Rather, **the claims require a specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers.**

*Id.* at 1009 (emphasis added).

In *Core Wireless* too, the claims found patent-eligible were directed not to a user interface "idea," but rather "a particular manner of summarizing and presenting information in electronic devices" including a number of specific elements:

> 'an application summary that can be reached directly from the menu,' *specifying a particular manner by which the summary window must be accessed*. The claim further requires the application summary window list a limited set of data, 'each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application.' This claim limitation *restrains the type of data that can be displayed in the summary window*. Finally, the claim recites that the summary window 'is displayed while the one or more applications are in an un-launched state,' a requirement that the device applications exist in a particular state. These limitations disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer.

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362-63 (2018) (emphasis added).[2]

---

[2] *See* Appendix A.

The representative '933 and '034 Patent claims, in contrast, do not "recite a specific improvement over prior art systems, resulting in an improved user interface." *Id.* at 1363. Claim 9 purportedly claims the concept of using known text cursors to correct text in a known synchronous playback mode but without disclosing any specific implementation or interface for doing so. Likewise, claim 8 of the '034 Patent purportedly claims the concept of moving a text and audio cursor in tandem "automatically" but claims no specific implementation or improved method for doing so. For these reasons, the representative claims each claim a result and not a patent-protectable manner of achieving it. *SAP Am., Inc. v. InvestPic, LLC,* 890 F.3d 1016, 1021-22 (Fed. Cir. 2018) (a claimed invention must embody a concrete solution to a problem having "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it").

Although the Report states that the representative claims recite "specific technological modification of synchronized audio and text cursors" and "specific implementation[s]" of the claimed inventions (R&R at 22), it does not identify any claim language that actually does so, and none exists. The fact that the claims recite text cursors for editing text information and audio cursors that highlight portions of the text as the audio plays is neither inventive nor a user interface improvement, because both of those elements and their claimed functionality were known. (*See, e.g.,* '933 Patent at 1:29-50). The claims do not describe how the cursors must be displayed to the user, how they are "automatically synchronized," or how any of the claimed inventive functionality is enabled. The specification is similarly devoid of description of how one obtains the claimed inventive concept.[3]

---

[3] The specification suggests simply that "[a] computer program … can be directly loaded into the internal memory of a digital computer and comprises software code sections, the computer executing the steps of the above-mentioned correction method if the product runs on the

While the Report concluded that the claims at issue in this case were analogous to those found valid in *Core Wireless* because they are "directed to 'a particular manner of….presenting information' in a speech recognition device" (R&R at 24), it pointed to no inventive elements in the representative claims that would limit the manner in which the claimed text and audio cursors are displayed so long as they were "synchronized" (claim 8) or could be used when the correction device was in "synchronous playback mode" (claim 9).[4] That means that the '933 and '034 Patents claim abstract concepts, not specific user interfaces.

Furthermore, the Report focused on the ***outcome*** of the alleged inventions, rather than what was actually claimed, in finding the inventions were non-abstract. More specifically, the Report found that the representative claims of the '933 and '034 Patents were similar to the Tab Patents in *Data Engine* because they "eliminate[] the need to stop the acoustic playback each time a correction is made" and "permit the user to quickly correct the transcript and move to the current location of the acoustic playback without time-consuming navigation keystrokes" and thus "improve[d] the functionality of speech recognition devices by facilitating navigation of the text information." (R&R at 23). None of this is in the claims, however, and the § 101 abstract idea analysis requires the court to look at whether the *claims* are directed to excluded subject matter, rather than the alleged outcome of the invention. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573

---

computer." ('933 Patent at 3:24-28). Elsewhere, it describes an "editing means" which is "designed to position the text cursor TC and to edit a word recognized as incorrect by the user when the synchronous playback mode is active in the correction device" (*id.* at 6:35-38) and which synchronization information based on, for example, keyboard shortcuts pressed by a user (*id.* at 7:11-21), but this "editing means" is not included in the representative claims. Moreover, even if "editing means" were included in the claims, it would be invalid under 35 U.S.C. § 112, ¶ 2 because it fails to disclose an algorithm for achieving the claimed function.

[4] Plaintiff faced similar difficulty in the original briefing. (*See* D.I 28 at 12 13 (failing to identify the "specific implementations to improve the capabilities of transcription correction software" allegedly claimed by the '933 and '034 Patents)).

6

U.S. 208, 218 (2014) ("We must first determine whether the *claims at issue* are directed to a patent-ineligible concept.") (emphasis added); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016) ("We … look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.").

### 2. The '933 and '034 Patents are Akin to Invalid User Interface Patents

The Report did not address several key Federal Circuit cases in which patents for alleged user interface improvements directly analogous to those at issue here were found to claim an abstract idea. Those cases compel a different conclusion than the one the Report reaches.[5]

For example, having determined that the representative claims of the '933 and '034 Patents were directed to an alleged improvement in a user interface, the Report should have looked to *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015). The patent at issue there claimed an improvement to a user interface to an online application. The patent specification stated that the invention, an alleged improvement over prior computer-implemented methods of entering information into online application forms, "maintain[ed] virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant" (also called "maintaining the state" by the Patent) so that a user could use the internet browser's back and forward buttons without losing data previously entered into the application form. *Id.* at 1345.

Despite the user-friendly *outcome* of the alleged invention, the Federal Circuit held that it claimed the abstract idea of "retaining information in the navigation of online forms." *Id.* at 1348.

---

[5] Charts comparing the representative '933 and '034 Patent claims to claims found patent ineligible and discussed in this section are at Appendix B.

In so holding, the Federal Circuit relied on the fact that the majority of the claimed elements were well-known and described as common in the patent, and the alleged "mechanism for maintaining the state is not described, although this is stated to be the essential innovation." *Id.*

The '933 and '034 Patents are directed to a similarly patent ineligible idea of correcting errors in dictated text while the audio of the dictated text is being played back, and likewise only describe the *result* of synchronizing cursors and being able to edit using cursors in synchronous playback mode. The Federal Circuit has held in other precedential cases that the idea of improving a user interface, without any claimed mechanism for carrying out that idea, is abstract. *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) (patent claiming the presentation of two sets of information in a non-overlapping way, on a display screen, without any real solution for producing that result, was an abstract idea); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) ("We affirm the Board's conclusion [on CBM review] that the claims in these patents are directed to an abstract idea. The patents claim systems including menus with particular features. They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems. Essentially the claims are directed to certain functionality—here, the ability to generate menus with certain features."). The Report did not address or distinguish these decisions, which compel a different conclusion than the one the Report reaches.

The Report also did not address the Federal Circuit's finding in *Data Engine* that claim 1 of the '551 Patent at issue was invalid because it was directed to the abstract idea of identifying and storing electronic spreadsheet pages, including "associating each of the cell matrices with a user-settable page identifier," but did not claim any specific *means* for identifying electronic spreadsheet pages. *Data Engine*, 906 F.3d at 1012. Likewise, the Report did not address the

Federal Circuit's determination in the same case that a claim for "a method of tracking changes in three-dimensional spreadsheets" which "automatically determin[ed]" which cells of data in two versions of spreadsheets had changed was abstract. *Data Engine*, 906 F.3d at 1013. In so finding, the Federal Circuit held that generically claiming the "automation" of the claimed process for determining changes to spreadsheets by comparing them did not "improve[] spreadsheet functionality in a specific way sufficient to render the claims not abstract." *Id.* Like all of the *Data Engine* claims found invalid, the '933 and '034 Patents merely claim the concept of automating a known process that admittedly was being performed by humans using conventional computer components and interface elements, without claiming any real means for accomplishing that result.

### 3. The '933 and '034 Patents' Dependent Claims Are Also Abstract

The Report concluded that the asserted dependent claims of the '933 and '034 Patents further limit the claimed method and are patent eligible for the same reasons as the representative claims. Since the dependent claims do not contribute any inventive concept, a different result is compelled just as it is for the independent claims. (*See* D.I. 21 at 15-16; D.I. 36 at 8-9).

## B. The '933 and '034 Patents Also Fail *Alice* Step Two

The Report did not reach step two of the *Alice* inquiry in light of its finding at step one. (R&R at 24). Once this Court properly reaches the step two inquiry, it should find that the '933 and '034 Patent representative claims also have no inventive concept that transforms the claimed abstract idea into a patent-eligible application of that idea. (*See* D.I. 21 at 13-15; D.I. 36 at 8-9).

## V. CONCLUSION

For all of the foregoing reasons, the Report erred in determining that the '933 and '034 Patents claim patent-eligible concepts and should not be adopted with respect to the '933 and '034

Patents.  This Court should find that the '933 and '034 Patents are invalid under 35 U.S.C. § 101 for the reasons set forth here and in MModal's original briefing (D.I. 21; D.I. 36).

| | |
|---|---|
| Dated:  December 28, 2018 | Respectfully Submitted,<br><br> /s/ Richard L. Renck<br>Richard L. Renck (#3893)<br>relrenck@duanemorris.com<br>**DUANE MORRIS LLP**<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801<br>Telephone: (302) 657-4900<br><br>L. Norwood Jameson (admitted *pro hac vice*)<br>wjameson@duanemorris.com<br>Alison H. Hutton (admitted *pro hac vice*)<br>ahhutton@duanemorris.com<br>**DUANE MORRIS LLP**<br>1075 Peachtree St. NE, Suite 2000<br>Atlanta, GA  30309-3929<br>Telephone:  (404) 253-6900<br>Facsimile:  (404) 253-6901<br><br>Anthony J. Fitzpatrick (admitted *pro hac vice*)<br>ajfitzpatrick@duanemorris.com<br>Christopher S. Kroon (admitted *pro hac vice*)<br>cskroon@duanemorris.com<br>Michael R. Gottfried (admitted *pro hac vice*)<br>mrgottfried@duanemorris.com<br>**DUANE MORRIS LLP**<br>100 High Street, Suite 2400<br>Boston, MA  02110<br>Telephone:  (857) 488-4200<br>Facsimile:  (857) 488-4201<br><br>Jarrad M. Gunther (admitted *pro hac vice*)<br>jmgunther@duanemorris.com<br>**DUANE MORRIS LLP**<br>30 South 17th Street<br>Philadelphia, PA 19103-4196<br>Telephone:  215.979.1000<br>Facsimile:  215.979.1020 |

David K. Callahan (admitted *pro hac vice*)
david.callahan@lw.com
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7694

Kevin C. Wheeler (admitted *pro hac vice*)
kevin.wheeler@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-3311

Stephen D. O'Donohue (admitted *pro hac vice*)
stephen.odonohue@lw.com
885 Third Avenue
New York, NY 10022-4834
Telephone:  (212) 906-1200

*Counsel for Defendant MModal LLC*