# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) C.A. No. 17-1484-MN <br> v. ) <br> ) **JURY TRIAL DEMANDED** <br> MMODAL LLC, ) <br> ) <br> Defendant. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO DEC. 14, 2018 REPORT AND RECOMMENDATION (D.I. 131)

OF COUNSEL:

David J. Lender
Anish R. Desai
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Christopher T. Marando
Stephen Bosco
Megan H. Wantland
WEIL GOTSHAL & MANGES, LLP
2001 M Street, NW Suite 600
Washington, DC 20036
Tel: (202) 682-7000

Amanda Branch
WEIL GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000

David Greenbaum
NUANCE COMMUNICATIONS, INC.
1111 Macarthur Blvd.
Mahwah, NJ 07430
Tel: (201) 252-9100

Dated: January 11, 2019
6051516 / 43964

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff Nuance Communications Inc.*

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. RESPONSE............................................................................................................................ 1

    A. THE 933 AND 034 PATENTS ARE DIRECTED TO SPECIFIC IMPROVEMENTS TO TRANSCRIPTION EDITING SOFTWARE, NOT AN ABSTRACT IDEA .............................. 1

    B. MMODAL'S NEW ARGUMENTS DO NOT DEMONSTRATE THE 933 AND 034 PATENTS ARE INVALID ...................................................................................... 5

    C. THE DEPENDENT CLAIMS ARE ALSO NOT ABSTRACT IDEAS ................................. 8

    D. THE REPORT CORRECTLY DECLINED TO REACH *ALICE* STEP 2 ............................... 8

III. CONCLUSION..................................................................................................................... 9

**TABLE OF AUTHORITIES**

**CASES**

Page(s)

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) .................................................................................... 7-8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ..................................................................................... 3, 5

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) ..................................................................................... passim

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .........................................................................................6

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .................................................................................... 7-8

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    62 F. Supp. 3d 368 (D. Del. 2014) ....................................................................................5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .........................................................................................7

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017) .........................................................................................6

*U.S. Bank Nat'l Ass'n v. Nat'l Collegiate Student Loan Tr. 2003-1*,
    C.A. No. 16-341-JFB-SRF, 2018 WL 4462369 (D. Del. Sept. 18, 2018) ................................5

**STATUTES & RULES**

FED. R. CIV. P. 72 ..................................................................................................................4

## I. INTRODUCTION

The Magistrate Judge's well-reasoned Report and Recommendation regarding the validity of the 933 and 034 Patents should be adopted. Judge Fallon found that the 933 and 034 Patents are not directed to an abstract idea under *Alice* step one, and therefore concluded the patents are patentable, without reaching step two. This is the correct result.

MModal continues to oversimplify and mischaracterize the inventions in the 933 and 034 Patents in its Objections. As set forth in Nuance's brief and as recognized by the Court, the 933 and 034 Patents identified specific problems in prior methods for editing and correcting text output by speech recognition software, and through the claims, provide a particular means to remedy those problems. Stripped of its rhetoric, MModal's Objections amount to little more than a contention that the claims are not sufficiently specific, and therefore amount to an "abstract idea." MModal's argument is contrary to Federal Circuit authority (including that applied in the Report) and the Recommendation as to the 933 and 034 Patents should be adopted.

## II. RESPONSE

### A. The 933 and 034 Patents are Directed to Specific Improvements to Transcription Editing Software, Not an Abstract Idea

As Judge Fallon recognized, despite MModal's attempts to over-generalize the claims, the 933 and 034 Patents "are not directed to an abstract idea, but instead recite solutions to problems rooted in automatic speech recognition technology." D.I. 131 ("Report") at 21. Specifically, the 933 and 034 Patents relate to computer-implemented devices and methods for assisting users, namely transcriptionists, in recognizing and correcting errors in a transcription created by a speech recognition device. *See, e.g.,* 933 Patent at claims 1, 9; 034 Patent at claims 1, 8. The patents are specifically directed to improvements for those systems, primarily by reducing the amount of time wasted during editing. Indeed, the 933 and 034 Patents discuss in detail issues with prior systems.

*See, e.g.,* 933 Patent at 1:16-58, 2:7-13. Specifically, when using prior methods to correct text in a transcription output by a speech recognition device, a transcriptionist would have to stop synchronous playback mode, take time to navigating the editing cursor to the error, implement edits, and then reactivate the synchronous playback mode. *See, e.g.,* 933 Patent at 1:5-58. Because transcriptionists are generally paid by the number of lines edited, a "corrector therefore has a major interest in word processing software with which he can correct with the greatest time saving and lowest possible manual effort incorrect words recognized by him when the synchronous feedback mode is active." *Id.* at 1:59-2:1.

The Report correctly recognized that the 933 and 034 Patents identified these "inefficiencies" in prior methods and "address[ed] these problems" through the "specific technological modification of synchronized audio and text cursors which allow a user to edit while synchronous playback mode is activated." Report at 21-22. Therefore, the Court concluded the patents are directed to particularized, technical solutions to these problems encountered in prior transcription editing systems. *See id.*

In finding the claims not directed to an abstract idea, the Report analogized two Federal Circuit cases, *Data Engine* and *Core Wireless*, which plainly support the validity of the 933 and 034 Patents. First, in *Data Engine,* the Federal Circuit analyzed the "Tab Patents" which were directed to "providing a highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional worksheet environment." *Data Engine Techs. LLC v. Google LLC,* 906 F.3d 999, 1008 (Fed. Cir. 2018). Despite building on known elements like a notebook with tabs, the Federal Circuit found that the Tab Patents were "not directed to an abstract idea. Rather, the claim is directed *to a specific method* for navigating through three-dimensional electronic spreadsheets." *Id.* at 1007-08 (emphasis added).

In fact, the Tab Patents and the patents at issue here had similar goals, including improved user efficiency. *See e.g., id.* at 1008 ("The specification teaches that prior art computer spreadsheets were not user friendly. They required users to 'master many complex and arbitrary operations.'"). The Federal Circuit recognized that, "[t]he Tab Patents solved this known technological problem in computers in a particular way," just like the 933 and 034 Patents do here. *Id.* As such, the Report correctly concluded that, "like the Tab Patents at issue in *Data Engine Technologies*, the representative clams of the 933 and 034 patents improve the functionality of speech recognition devices by facilitating navigation of the text information." Report at 23.

The Federal Circuit's opinion in *Core Wireless* similarly supports the Report's conclusion. There, the claims were directed to a "user interface for computing devices." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 880 F.3d 1356, 1362 (Fed. Cir. 2018). Notably, the Federal Circuit recognized that "[a]lthough the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices" which addressed problems with prior interfaces. *Id.* at 1362. Citing an extensive line of precedent, the Federal Circuit concluded, "[l]ike the improved systems claimed in *Enfish, Thales, Visual Memory*, and *Finjan*, these claims recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices." *Id.*

Despite these recent, highly instructive Federal Circuit cases relied upon in the Report recognizing that specific technological improvements to known problems do not constitute "abstract ideas," MModal protests that the 933 and 034 Patents' claims are not sufficiently detailed improvements. MModal cites no authority that supports this conclusion, and its comparative claim

charts attached as Appendix A belie it.[1] Although MModal's Objections are replete with allegations that the claims are devoid of detail regarding "how" to achieve these improvements, the claims of the 933 and 034 Patents plainly require, *inter alia,* link information associating text with audio, two cursors (an audio cursor and a text cursor), synchronization of those two cursors, allowing editing while playback is active, and positioning the text cursor at a predefined position in relation to the audio cursor. *See* 933 Patent claim 9, 034 Patent claim 8. When utilized in the manner set forth by the claims, the result is an improved, more efficient process for editing transcriptions.

Unable to undermine the specific technological improvements recited in the claims, MModal contends that the Report improperly focuses on the "outcome" of the inventions of the 933 and 034 Patents. In doing so, MModal confuses the advantages that the 933 and 034 Patents—more efficient, cost-effective transcription editing requiring fewer manual operations—with the methods designed to achieve them that are set forth in the claims.

For example, the 933 Patent explains, "[o]f particular advantage here is that the manual deactivation of the synchronous playback mode and after editing the manual activation of the synchronous playback mode are dispensed with, which saves more time." 933 Patent at 3:40-43. The 933 Patent's claim 9 recites, "editing of the incorrect word with a text cursor (TC) according to editing information (EI) entered by a user, the editing of the incorrect word being possible with the synchronous playback mode activated in the correction device (10)." As the limitation makes clear, editing is possible while the synchronous playback mode is active, which means the mode

---

[1] MModal attached two Appendices, comprising more than 10 pages, comparing the claims in certain Federal Circuit cases with the claim in the 933 and 034 Patents. To the extent they are considered further argument, MModal's Objections would exceed the page limitation established by the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72.

4

does not have to be manually stopped and started, which saves time. MModal's suggestion that the claim language itself must expressly recite this achieved objective (Obj. at 6) has no support in Federal Circuit authority. *See, e.g., Data Engine Techs.,* 906 F.3d at 1008 (identifying specific technological improvements accomplished by, but not necessarily recited in, the claims); *Core Wireless,* 880 F.3d at 1362 (same).

Instead, as the Report correctly concluded, "compared to the prior art, which undermined the efficiency of a speech recognition device by requiring the user to stop the synchronous playback mode each time an edit was made, and which required a user to navigate the text cursor manually using multiple keystrokes, the interface set forth in the representative claims of the 933 and 034 patents set forth significant improvements to the efficiency of the speech recognition device." Report at 22. As explained above, this result is well supported by the claims, when viewed in light of the specification, and is consistent with Federal Circuit authority.

### B. MModal's New Arguments Do Not Demonstrate the 933 and 034 Patents Are Invalid

MModal also objects to the Report because it "did not address several key Federal Circuit cases." Obj. at 7. However, none of the cases MModal chides the Court for failing to address were cited in its briefing. Accordingly, MModal's new arguments based on these cases are waived. *See U.S. Bank Nat'l Ass'n v. Nat'l Collegiate Student Loan Tr. 2003-1,* C.A. No. 16-341-JFB-SRF, 2018 WL 4462369, at *4 (D. Del. Sept. 18, 2018) ("Issues raised for the first time in objections to the Magistrate Judge's recommendations are deemed waived." (bracket and citation omitted)); *see also Masimo Corp. v. Philips Elec. N. Am. Corp.,* 62 F. Supp. 3d 368, 377 (D. Del. 2014) ("[P]arties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge.").

Regardless, none of these cases counsel a different result than the Report recommends here. MModal claims that its cited cases relate to "the idea of improving a user interface, without any claimed mechanism for carrying out that idea." Obj. at 8. In attempting to draw these comparisons, however, MModal commits the same flaw as in its briefing of oversimplifying and generalizing the claims of the patents. Unlike the cases MModal cites, such as *Internet Patents*, wherein the "claim [was] directed to the idea itself," (*Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343 (Fed. Cir. 2015)), the 933 and 034 Patents identify specific technical problems and the claims include detailed steps for improved methods to solve them. MModal's arguments fall prey to the temptations the Federal Circuit has specifically cautioned against by failing to "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

In attempting to revive its 101 challenge, MModal also cites the Federal Circuit's analysis of two other patents in *Data Engine*. The first patent related to "identifying and storing electronic spreadsheets," which the Court found to be directed to an abstract idea. *Data Engine Techs.,* 906 F.3d at 1012. The Court noted that the claim did not recite a "specific implementation" and instead, covered "any means for identifying electronic spreadsheet pages." *Id.* This is plainly not the case here. The 933 and 034 Patents do not claim all methods of transcription editing while listening to audio dictation, and are a far cry from the first invalidated patent in *Data Engine,* which contained claims reciting merely collecting and storing data. Instead, just like the other valid patents in *Data Engine*, the 933 and 034 Patents claim a "specific" and "particular" manner of more efficient editing, utilizing synchronization and multiple cursors, as set forth in the claims. *See id.* at 1008.

The second invalid patent in *Data Engine* covered a generic method for "tracking changes in a spreadsheet," which the Court determined was an abstract idea relating to collecting and

6

storing information. *Id.* at 1013. In doing so, the Court observed that the "mere automation" of the change-tracking process did not negate the abstractness of the idea. *Id.* MModal attempts to extrapolate from this determination to the 933 and 034 Patents, but stretches too far. The inventions described in the 933 and 034 Patents are not merely the same old transcription process that has been performed by humans with pencils,[2] just now automated on a computer. Instead, the 933 and 034 Patents are directed to and address problems that are specific to existing computerized transcription review systems. *See McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("The computer here is employed to perform a distinct process to automate a task previously performed by humans . . . This is unlike *Flook*, *Bilski*, and *Alice*, where the claimed computer-automated process and the prior method were carried out in the same way."); *see also Data Engine Techs.,* 906 F.3d at 1011 ("It is not enough, however, to merely trace the invention to some real-world analogy. The eligibility question is not whether anyone has ever used tabs to organize information. That question is reserved for §§ 102 and 103. The question of abstraction is whether the claim is 'directed to' the abstract idea itself.").

MModal's belated reliance on *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) and *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) is similarly unavailing. MModal asserts that the cases stand for the proposition that "the idea of improving a user interface, without any claimed mechanism for carrying out that idea, is abstract" (Obj. at 8),

---

[2] MModal, in its original brief, contended that the patents were directed to an abstract idea, because humans practiced the method described in the patents with a corrector "follow[ing] along on a hard copy of a transcribed text with a pencil and, in a 'synchronous' manner, strike out or make other text corrections." D.I. 21 at 12. Now, likely because of the obvious logical flaws with that contention, MModal contends that the 933 and 034 Patents merely claim the concept of "automating a known process that admittedly was being performed by humans using conventional computer components and interface elements." D.I. 142 at 12. Regardless of MModal's shifting approach, as demonstrated, the patents are directed to specific improvements over prior transcription systems.

7

but that is irrelevant since, as discussed above, the challenged claims of the 933 and 034 Patents are not directed to "the idea of improving a user interface"—they are directed to a specific, concrete process for improving a limited category of user interfaces in a narrow technical field. Indeed, MModal appears to be arguing that improvements to computer user interfaces are *per se* unpatentable—a position that is irreconcilable with the *Core Wireless* and *Data Engine* cases discussed above.

Further, there is no similarity between the claims at issue in *Interval Licensing* and *Apple* and those challenged here. In both of those cases, the challenged claims were directed to generic computer systems with functionally-defined characteristics. *See Ameranth,* 842 F.3d at 1234; *Interval Licensing*, 896 F.3d at 1339–40. Here, the challenged claims are directed to a specific process for improving known technological problems in computerized transcription editing systems; precisely the type of claims that the Federal Circuit confirmed were patentable in *Core Wireless* and *Data Engine*.

### C. The Dependent Claims Are Also Not Abstract Ideas

As the Report correctly concluded, the dependent claims of the 933 and 034 Patents are also patent-eligible, as they are directed to the same technological improvements as the independent claims. The dependent claims at issue each claim technological improvements resulting in fewer and/or less time consuming steps to make a correction. *See e.g.,* 933 Patent, claim 11; 034 Patent, claim 13.

### D. The Report Correctly Declined to Reach *Alice* Step 2

Because the claims of the 933 and 034 Patents are not directed to an abstract idea, Judge Fallon appropriately declined to engage in step 2 of the *Alice* test. Nothing in MModal's original briefing or objections here demonstrates otherwise.

### III. CONCLUSION

For the foregoing reasons, the Recommendation as to the 933 and 034 Patents should be adopted.

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| David J. Lender<br>Anish R. Desai<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000 | By: */s/ Bindu A. Palapura*<br>David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Stephanie E. O'Byrne (#4446)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801 |
| Christopher T. Marando<br>Stephen Bosco<br>Megan H. Wantland<br>WEIL GOTSHAL & MANGES, LLP<br>2001 M Street, NW Suite 600<br>Washington, DC 20036<br>Tel: (202) 682-7000 | Tel: (302) 984-6000<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>sobyrne@potteranderson.com<br><br>*Attorneys for Plaintiff*<br>*Nuance Communications Inc.* |

Amanda Branch
WEIL GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000

David Greenbaum
NUANCE COMMUNICATIONS, INC.
1111 Macarthur Blvd.
Mahwah, NJ 07430
Tel: (201) 252-9100

Dated: January 11, 2019
6051516/43964

9