# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| | ) C.A. No. 17-1484-MN |
| v. | ) ) **JURY TRIAL DEMANDED** |
| MMODAL LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF NUANCE COMMUNICATION INC.'S
OPPOSITION TO DEFENDANT'S MOTION TO STAY**

OF COUNSEL:

David J. Lender
Anish R. Desai
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Stephen Bosco
Megan H. Wantland
WEIL GOTSHAL & MANGES, LLP
2001 M Street, NW Suite 600
Washington, DC 20036
Tel: (202) 682-7000

Amanda Branch
WEIL GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000

Dated: March 15, 2019
6111030 / 43964

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff
Nuance Communications Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND..................................................................................................3

III. LEGAL STANDARDS ...........................................................................................................4

IV. ARGUMENT...........................................................................................................................5

 A. A STAY WILL NOT SIMPLIFY THE ISSUES FOR TRIAL ................................. 5

 1. The '295 Patent is Unaffected by the IPRs..................................................5

 2. The Existence of MModal's Counterclaims Means That The IPR Patents Will Remain at Issue Regardless of the IPR Outcomes...............................6

 3. MModal's Arguments Based on IPR Institution and Claim Construction Belie the Record............................................................................................8

 B. THE STAGE OF THE LITIGATION DOES NOT FAVOR A STAY.................... 10

 C. NUANCE WILL BE PREJUDICED IF ITS DAY IN COURT IS DELAYED ..... 11

 1. MModal Is A Competitor and a Stay Would Unfairly Delay Nuance's Opportunity to Disprove MModal's Counterclaim Allegations ................11

 2. A Stay Would Give MModal a Tactical Advantage in its Case Against Nuance Before the Northern District of Georgia ......................................12

V. CONCLUSION......................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bos. Sci. Corp. v. Edwards Lifesciences Corp.*,
   C.A. No. 16-275-JFB-SRF, 2018 WL 1891403 (D. Del. Apr. 20, 2018)..................................4

*Cooper Notification, Inc. v. Twitter, Inc.*,
   C.A. No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010).........................................12

*Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.*,
   C.A. No. 13-2012-SLR/SRF, 2015 WL 5145526 (D. Del. Sept. 1, 2015) ......................5, 7, 12

*Evolutionary Intelligence LLC v. Yelp Inc.*,
   No. 13-3587, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013).................................................. 6-7

*F'real Foods, LLC v. Hamilton Beach Brands, Inc.*,
   C.A. No. 16-41-GMS, 2017 WL 10619854 (D. Del. Mar. 9, 2017) ...............................5, 7, 12

*IMAX Corp. v. In-Three, Inc.*,
   385 F. Supp. 2d 1030 (C.D. Cal. 2005) .....................................................................................7

*Largan Precision Co. v. Fujifilm Corp.*,
   No. C 10-1318 SBA, 2011 WL 794983 (N.D. Cal. Mar. 1, 2011) ........................................6, 7

*Pegasus Dev. Corp. v. DIRECTTV, Inc.*,
   C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ....................13

*Plastic Omnium Advanced Innovation and Research v. Donghee America, Inc. et al*,
   C.A. No. 16-187-LPS, D.I. 278 (D. Del. Mar. 19, 2018) ..........................................................5

*Protective Indus., Inc. v. Ratermann Mfg., Inc.*,
   No. 3:10-1033, 2010 WL 5391525 (M.D. Tenn. Dec. 22, 2010) ............................................11

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys.*,
   C.A. No. 14-617-GMS, 2018 WL 3599359 (D. Del. July 27, 2018) ................................1, 8, 9

**Statutes**

35 U.S.C. § 315(e)(2)......................................................................................................................2

Plaintiff Nuance Communications, Inc. ("Nuance") submits the following opposition to the Motion to Stay (D.I. 183) filed by Defendant MModal LLC ("MModal").

## I. INTRODUCTION

The Court should deny the motion because a stay pending the outcome of the IPRs on the '933, '034, and '946 Patents ("IPR Patents") will not achieve the simplification MModal alleges. Moreover, it is clear that the true purpose of MModal's motion is to gain a tactical advantage, not simplifying the dispute between the parties.

First, a stay will not substantially simplify the issues for trial. The IPRs do not involve the '295 Patent, which has seven of the seventeen asserted claims in this case. The IPRs also will not resolve MModal's counterclaims of alleged abuse of process and unfair competition. These counterclaims will require evaluation of Nuance's infringement case on all of the asserted patents, including "claim construction, expert testimony…[and] briefing on the merits," regardless of how the PTAB resolves the IPRs. *See Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys.*, C.A. No. 14-617-GMS, 2018 WL 3599359, at *4 (D. Del. July 27, 2018). Thus denying the stay is, in fact, the more efficient way to proceed and avoids any prejudice to Nuance.

MModal has made the decision to front-load its invalidity case by filing IPRs, and the parties will know before the scheduled trial date whether any claims of the IPR Patents are deemed unpatentable by the PTAB. Thus, the impact of the IPRs can be incorporated into the proceedings here. In the unlikely event the PTAB finds all ten of the asserted claims of the IPR Patents unpatentable, the parties could proceed to trial on the '295 Patent and MModal's counterclaims (assuming they survive summary judgment). If Nuance prevails in whole or in-part at the PTAB, the parties could proceed to trial on the '295 patent, the claims of the IPR Patents found to be patentable, and MModal's counterclaims (assuming they survive summary judgment). MModal would also be foreclosed from asserting invalidity grounds it raised or reasonably could have

raised in the IPRs pursuant to 35 U.S.C. § 315(e)(2). Either way, the trial issues can be simplified without a stay. However, because of MModal's counterclaims, the same discovery will need to take place as to the IPR Patents regardless of the outcome of the IPRs given that Nuance's infringement contentions are at the center of those counterclaims. Thus, there is no reason to stay this case. To the contrary, a stay will unduly prejudice Nuance. Nuance will be forced to wait at least an additional year—and possibly longer[1]—to vindicate its patent rights against a direct competitor. In addition, and equally important, Nuance will be forced to wait another year to disprove—as it is eager to do—the false allegations that Nuance's infringement claims are "objectively baseless."

Second, MModal's motion is merely an attempt to gain an unfair tactical advantage. After Nuance filed the patent infringement complaint in this case on October 23, 2017, MModal responded by filing a separate patent infringement lawsuit against Nuance in the Northern District of Georgia on February 28, 2018. Nuance has filed IPRs against all four of the patents asserted by MModal in the Georgia case. Although Nuance does not believe a stay is warranted here, Nuance made a compromise proposal to MModal in an effort to equitably resolve this motion. Specifically, Nuance proposed to MModal that the same standard MModal is advocating for in the present motion should apply to the Georgia litigation—i.e., if any of Nuance's IPRs against MModal's patents are instituted, then MModal would agree to stay the Georgia case pending the outcome of those IPRs. *See* Ex. 1. This would ensure parity between the two cases. MModal,

---

[1] MModal's brief and motion are notably vague about when the requested stay would end, and are wholly silent as to a key timing issue—appeal. Presumably, if MModal receives unfavorable final written decisions on one or more of its IPRs, it will appeal the decisions and argue that the case should continue to be stayed pending appeal. If so, the stay could ultimately last years.

however, rejected Nuance's proposal and the notion that the same standard should apply in both cases, thus confirming that MModal's motion is about tactics, not efficiency. *See* Ex. 2.

## II.  FACTUAL BACKGROUND

Nuance is a leading provider of voice recognition and natural language understanding technology based in Burlington, Massachusetts. Healthcare-related applications of these technologies are a core part of its business, Ex. 3 at 5, and its flagship products in the healthcare space include Dragon Medical One, eScription, and Powerscribe 360. Ex. 4. Defendant MModal and its new parent company 3-M are competitors in the healthcare sector. Ex. 3 at 9; D.I. 175 at ¶ 88.

MModal traces its origins to the 2011 merger of medical transcription company Medquist, Inc. with MultiModal technologies. *See* Ex 5. The company that resulted from the merger—M*Modal, Inc.—was acquired in 2012 by an investment arm of JP Morgan Chase & Co. Ex. 6. In March 2014, MModal entered Chapter 11 bankruptcy. *See* Ex. 7. It emerged from bankruptcy later in 2014 after financial restructuring. Ex. 8. On December 19, 2018, MModal announced that it would be acquired by 3M, Ex. 9, and the 3M acquisition closed on February 1, 2019. Ex. 10.

Nuance initiated this lawsuit on October 23, 2017, and recently filed an amended complaint (D.I. 163) adding allegations of willful infringement on the basis of MModal admissions that key executives knew about Nuance's asserted patents years prior to the litigation. D.I. 163. The four patents asserted in Nuance's amended complaint—U.S. Pat. Nos. 6,766,295 ("the '295 Patent"), 6,999,933 ("the '933 Patent"), 8,117,034 ("the '034 Patent"), and 7,379,946 ("the '946 Patent")—relate to three different aspects of computer-assisted medical documentation and reporting: (1) front-end capture of clinical narratives ('295 Patent); (2) back-end transcription and correction of clinical narratives ('933 and '034 Patents); and (3) integration of clinical data into structured electronic health records ('946 Patent).

In response to Nuance's infringement claims, MModal filed four counterclaims. D.I. 175 at 50-62. Counts I and II were for a declaratory judgment of non-infringement and invalidity of the asserted patents, and counts III and IV were state law claims alleging abuse of process and unfair competition. *Id*. As to its abuse of process counterclaim, MModal's allegations included that "Nuance's infringement claims are objectively baseless because the Asserted Patents are invalid and are not infringed by [MModal]." *Id*. at ¶ 51. For its unfair competition counterclaim, MModal allegations included that "Nuance commenced this objectively baseless action and subsequently disseminated its false infringement accusations to the public at large…" *Id*. at ¶ 58. MModal filed IPR petitions on the '933, '034, and '946 patents. The PTAB determined to institute IPRs on these patents, with final written decisions due on February 6, 2020 ('946 Patent), February 19, 2020 ('933 Patent), and February 20, 2020 ('034 Patent).

Pursuant to the Court's scheduling order (D.I. 34), the parties substantially completed document production on December 3, 2018. Nuance served two 30(b)(6) deposition notices on MModal on February 8, 2019, and March 1, 2019, respectively. Nuance also served 30(b)(1) deposition notices on five MModal witnesses, with the first scheduled for March 25, 2019. A *Markman* hearing is scheduled for April 8, 2019, with fact discovery to close on June 15, 2019. The Court scheduled the trial to begin on April 6, 2020.

MModal also separately filed a lawsuit against Nuance in the Northern District of Georgia alleging infringement of four patents. *MModal v. Nuance*, Case No. 1:18-cv-00901-WMR (N.D. Ga.). Nuance has filed IPRs against all four of MModal's asserted patents.

### III. LEGAL STANDARDS

Whether a request for a stay should be granted is committed to the discretion of the district court. *Bos. Sci. Corp. v. Edwards Lifesciences Corp.*, C.A. No. 16-275-JFB-SRF, 2018 WL 1891403, at *2 (D. Del. Apr. 20, 2018). Courts ruling on a stay request typically evaluate the

4

following three factors: "(1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Id.* (citation omitted).

## IV. ARGUMENT

### A. A Stay Will Not Simplify the Issues For Trial

#### 1. The '295 Patent is Unaffected by the IPRs

MModal acknowledges, as it must, that "the '295 Patent would remain in this litigation" even if MModal "invalidat[es] all claims in each of the IPRs." MM. Br. (D.I. 184) at 8. Thus, even if MModal were to prevail as to each claim of each patent subject to IPR—an unlikely outcome, as discussed below—the parties will still go to trial on Nuance's infringement claims as to the '295 Patent. Courts have consistently found that the failure of IPRs (or predecessors such as *inter partes* reexamination) to potentially resolve all claims at issue in the litigation is a key factor weighing against a stay. *See, e.g.*, *Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.*, C.A. No. 13-2012-SLR/SRF, 2015 WL 5145526, at *2 (D. Del. Sept. 1, 2015) ("Given the fact that the IPRs will not fully resolve the dispute between these parties, I conclude that a stay will not simplify the issues in question or trial, will not reduce the burden of litigation, and will unduly prejudice the patent holder at bar."); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-41-GMS, 2017 WL 10619854, at *1 (D. Del. Mar. 9, 2017) (denying stay and finding that "the issues before the court will be minimally simplified by the recently instituted *inter partes* review and *ex parte* reexamination proceedings regarding two of the [four] patents-in-suit"); *Plastic Omnium Advanced Innovation and Research v. Donghee America, Inc. et al*, C.A. No. 16-187-LPS, D.I. 278 (D. Del. Mar. 19, 2018) (denying stay where six of seven asserted patents were subject to instituted IPRs). That the seven asserted claims of the '295 Patent will remain in this

5

case irrespective of the outcome of the IPRs confirms that the IPRs will not resolve all issues in the case and cannot, therefore, "truly simplify" the case by eliminating a trial.[2] *Accord Largan Precision Co. v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 WL 794983, at *3 (N.D. Cal. Mar. 1, 2011) (explaining that "to truly simplify the issues *the outcome of the reexamination must finally resolve all issues in the litigation*" (citation omitted; emphasis in original)).

Unique facts regarding the '295 Patent further weigh against a stay. The '295 Patent accounts for almost half of Nuance's asserted claims. The '295 Patent also implicates every MModal product that relies upon front-end automatic speech recognition. This encompasses every accused product still at issue in the litigation and every product in MModal's flagship line of Fluency front-end solutions (Fluency Direct, Fluency for Transcription, and Fluency for Imaging). MModal's assertion that "the number of accused products at issue" would be reduced if it prevailed in the IPRs (MM. Br. at 9) is incorrect.

### 2. The Existence of MModal's Counterclaims Means That The IPR Patents Will Remain at Issue Regardless of the IPR Outcomes

Nuance's infringement claims are not the only causes of action in this litigation. This case also includes MModal's state law counterclaims for abuse of process and unfair competition. These counterclaims will be litigated regardless of what happens at the PTAB—a fact that distinguishes the circumstances here from every stay case MModal cited in its opening brief. Indeed, one of the cases MModal relies upon expressly identified the ***absence*** of counterclaims as an important factor underlying its decision to grant a stay. *See Evolutionary Intelligence LLC v.*

---

[2] While MModal touts the simplification benefits of IPRs in this case even where nearly half the asserted claims are unaffected, it has taken the opposite position in its Georgia litigation, rejecting the notion that a single instituted IPR could "simplify the Georgia case to an extent sufficient to justify a stay." Ex. 2 at 2. This demonstrates that MModal's position on a stay is form over substance; it is based on the number of IPRs, not the number of asserted claims and thus how the IPRs actually affect the litigation.

6

*Yelp Inc.,* No. 13-3587, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013) ("Plaintiff has alleged only patent infringement claims and Yelp has not brought counterclaims. Thus, there are no claims that could not be resolved by IPR."). Here, the presence of MModal's counterclaims weighs heavily against a stay.

This is consistent with the repeated holdings of courts in this District and elsewhere that the existence of counterclaims that cannot be resolved by the PTAB renders any simplification effects illusory, and weighs against a stay. *See f'real Foods,* 2017 WL 10619854, at *1, n.4 (denying stay in part because "trademark infringement issues, and Defendants inequitable conduct and antitrust counterclaims" create "many issues that will need to be resolved … regardless of what happens on *inter partes* review") (internal citation omitted); *Courtesy Prod.,* 2015 WL 5145526, at *2 (denying stay in part because defendant "has included in its answer to the amended complaint counterclaims and defenses that exceed the scope of the allowable challenges in the IPR"); *Largan,* 2011 WL 794983, at *3 ("If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide a final resolution." (citation omitted)); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005) (denying stay pending reexamination after finding that, even if the PTO "eliminate[d]" all asserted patent claims, "the court must still address [defendant's] counterclaims," which "would not be sufficiently simplified to justify a stay").

Furthermore, MModal's state law counterclaims hinge upon allegations "that [Nuance] brought this suit for improper, market-motivated reasons, and that its infringement allegations are objectively baseless." MM. Br. at 1. Whether infringement is "objectively baseless" necessarily requires an evaluation of the substance of Nuance's infringement claims on the IPR Patents. When MModal grounded its state law counterclaims on allegations that Nuance's infringement case was

7

"objectively baseless," MModal placed the factual question of infringement at the center of those counterclaims. Thus, the same remaining fact and expert discovery will need to take place as to the IPR Patents regardless of the outcome of the IPRs, and the Court will still need to perform claim construction. *See, e.g., Rothschild*, 2018 WL 3599359, at *4 (whether defendant's claim that plaintiff's infringement case lacked substantive strength in view of IPR institution "require[d] the court to evaluate the strength of the parties' substantive positions," including "claim construction, expert testimony, or any briefing on the merits…."). Thus, granting a stay and awaiting the outcome of the IPRs will not meaningfully reduce the work that remains to be done by the parties and the Court or eliminate the issue of infringement of the IPR Patents from being an issue at the trial.

### 3. MModal's Arguments Based on IPR Institution and Claim Construction Belie the Record

MModal argues that a stay will simplify the case based on (1) the purported likelihood that all challenged claims will be eliminated in the IPRs and (2) alleged simplification of claim construction issues. MModal misrepresents the record. MM. Br. at 7-9.

On the first issue, whether the IPRs result in cancellation of all instituted claims cannot be ascertained because of the preliminary nature of IPR institution decisions. Specifically, the "reasonable likelihood" conclusions in the institution decisions here were limited to a single claim of each IPR Patent—only three of the ten challenged claims. D.I. 185-4 ('933 Inst. Dec.) at 32, D.I. 185-5 ('034 Inst. Dec.) at 24; D.I. 185-3, ('946 Inst. Dec.) at 24. Further, the Patent Office cautioned that "[o]ur observations are preliminary, and we have made no findings of fact under the preponderance of the evidence standard."' D.I. 185-5 at 28; *see also* D.I. 185-3 at 37, D.I. 185-4 at 32. These facts show that the possibility of all challenged claims being cancelled is too speculative to justify delaying a litigation that is already eighteen months old.

8

MModal's arguments that the IPRs will simplify claim construction also fail to justify a stay. According to MModal, "two thirds of the claim construction disputes will be resolved" by the IPRs. MM. Br. at 9. This argument again speculates that all challenged claims will be cancelled by the Patent Office. It also ignores that the Patent Office will conduct the IPRs under the "broadest reasonable interpretation" standard for claim construction, as opposed to the *Phillips* standard that the Court will utilize in construing the claims. Moreover, as discussed above, regardless of the outcomes of the IPRs, the Court will still need to construe the asserted claims to evaluate MModal's counterclaims. *See Rothschild*, 2018 WL 3599359, at *4.

Nevertheless, MModal argues that claim construction will simplify the case because "the IPR proceedings will become part of the intrinsic record." MM Br. at 9. This argument does not consider that (1) the parties have already completed claim construction briefing, provided the Court with technology tutorials, and are weeks from the claim construction hearing, and (2) the parties' briefing already includes arguments based on the parties' IPR positions. Specifically, on December 21, 2018, the parties filed an eighty-six page joint claim construction brief accompanied by an almost four hundred page Joint Appendix of exhibits relevant to claim construction. These submissions resulted from a months-long process of claim term identification and briefing that began when the parties first identified claim terms for construction on September 13, 2018. The parties also provided technology tutorials to the Court on December 21, 2018, and filed tutorial objections on January 9, 2019. MModal's proposal for a stay so that the IPR proceedings can be part of the intrinsic record is an attempt to discard this prior work and restart claim construction. All this, according to MModal, for the possibility that information material to claim construction *may* become available during the instituted IPRs. Speculation of what may happen before the Patent Office does not justify discarding the parties' considerable claim construction efforts.

This is particularly so since the parties' existing claim construction briefing *already accounts for positions taken in the IPRs*. MModal repeatedly cited the IPR proceedings and grounded many of its arguments on positions it contends Nuance has already taken in the IPRs. *See, e.g.* D.I. 137 at 10 ("As is evident from the parties' proposed constructions and Nuance's positions in the IPRs, the parties dispute whether a cursor must be displayed 'on a computer screen.'"); *id.* at 29 ("Nuance's arguments in the IPR also demonstrate that the 'predetermined position' phrase requires both the audio cursor and text cursor to be displayed and visible simultaneously, as MModal's construction proposes."). Since the claim construction record before the Court already includes extensive evidence from the IPRs, there is no reason to delay the Court's claim construction decision based upon MModal's speculation that more evidence may arise.

### B. The Stage of the Litigation Does Not Favor a Stay

MModal is incorrect in arguing that the procedural posture of this case supports a stay. This case is not in its "Early Stages" as MModal contends. MM. Br. at 11. As discussed above, the parties have already completed claim construction briefing and prepared technology tutorials. The claim construction hearing is currently set for April 8. In addition, the parties have produced hundreds of thousands of pages of documents, with the deadline for substantial completion of document production having passed more than three months ago. D.I. 34 at 3. Nuance has also served two 30(b)(6) deposition notices and five 30(b)(1) deposition notices, the first of which is noticed for March 25th. D.I. 174, 186-191. And the close of fact discovery is only three months away, with expert report deadlines shortly thereafter. D.I. 34 at 1, 4. This case is therefore not in its "Early Stages." Furthermore, because the trial in this case is scheduled for April 6, 2020, which is almost two months *after* the PTAB issues the last of the final written decisions in the IPRs, there is no need to stay this case for the Court to consider the outcome of the IPRs in potentially simplifying issues for trial.

### C. Nuance Will be Prejudiced If Its Day in Court is Delayed

#### 1. MModal Is A Competitor and a Stay Would Unfairly Delay Nuance's Opportunity to Disprove MModal's Counterclaim Allegations

A stay would be prejudicial because it would deprive Nuance of the ability to disprove MModal's defamatory allegations that Nuance "brought this suit for improper, market-motivated reasons, and that its infringement allegations are objectively baseless." MM. Br. at 1; *see also* D.I. 41 at 57-65; D.I. 175 at 53-62. These meritless allegations would persist during a stay, and the resulting prejudice justifies denial of the motion. *See Protective Indus., Inc. v. Ratermann Mfg., Inc.*, No. 3:10-1033, 2010 WL 5391525, at *3 (M.D. Tenn. Dec. 22, 2010) (denying stay in part because "the plaintiff is correct that it is simply not fair for the plaintiff and associated individuals to be exposed to an allegation of fraud and not given an opportunity to respond for years.").

The allegations that underlie MModal's state law counterclaims are inflammatory. They are also untrue. MModal asserts, for example, that Nuance issued a "knowingly false" press release (D.I. 175 at ¶¶ 121, 124)—even though the press release in question accurately reported that Nuance's lawsuit "*alleges* that M*Modal products violate six Nuance patents." Ex. 11.[3] MModal goes on to assert, without evidence, that "Nuance and its sales representatives initiated a campaign to spread Nuance's false accusations of infringement by contacting the existing and potential customers of MMLLC's operating affiliates and providing them with Nuance's press release." D.I. 175 at ¶ 38. Indeed, when Nuance asked MModal, via interrogatory, to provide substantiating evidence for this allegation, MModal—even with the benefit of over a year of discovery—could not identify any campaign. Ex. 12 at 6-8. And as to the objective merits of Nuance's infringement allegations, discovery has not only revealed extensive evidence of

---

[3] All emphasis added unless otherwise noted.

MModal's infringement, it has revealed that MModal executives have known about the asserted patents for years—including while they were developing the accused products. D.I. 163, ¶¶ 51-53, 61-62, 64, 75, 77-78. Nuance has thus developed a strong case against MModal's allegations—allegations that would unfairly persist during a stay.

In addition, that Nuance and MModal are competitors makes this prejudice worse. *See* D.I. 175 at ¶ 88 (Modal alleging that "[a]s to the product market at issue in this case, [MModal] and its operating affiliates are Nuance's principal competitors."). Courts in this district have repeatedly recognized that whether or not the parties are competitors is a crucial—and perhaps the most crucial—factor in determining whether to grant a stay. *See, e.g. Courtesy Prod.*, 2015 WL 5145526, at *2 ("Finally, and **perhaps most significantly, Courtesy is in direct competition with, and has lost business to**, Hamilton Beach."); *f'real Foods*, 2017 WL 10619854, at *1 ("Hamilton Beach's own antitrust counterclaims demonstrate that f'real and Hamilton Beach compete in the relevant market. Thus, the court finds that plaintiffs will be unduly prejudiced by a stay of the action.'); *Cooper Notification, Inc. v. Twitter, Inc.*, C.A. No. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors."). Granting a stay would delay Nuance's opportunity to defend itself, and would allow MModal another year or more to broadcast its unsubstantiated allegations.

### 2. A Stay Would Give MModal a Tactical Advantage in its Case Against Nuance Before the Northern District of Georgia

A stay would also provide MModal an unfair tactical advantage in its second-filed patent infringement case against Nuance in the Northern District of Georgia. MModal ostensibly filed the Georgia litigation rather than assert its patent infringement allegations as counterclaims in this case in the hopes that it would proceed faster than the Delaware litigation. This motion is nothing more than a tactical ploy to leap the Georgia case ahead of this case.

MModal has argued to this Court that "***even if not all asserted claims are under administrative review, a stay is warranted*** because an IPR is likely to alter the landscape in such a way as to simplify matters for trial." MM Br. at 8 (citation including *Pegasus Dev. Corp. v. DIRECTTV, Inc.*, C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 at *2 (D. Del. May 14, 2003)). MModal, however, does not subscribe to this assertion when it comes to its own claims. Although Nuance does not believe a stay is warranted here, in an effort to fairly resolve this motion, and to test MModal's assertion, Nuance made a compromise proposal to MModal. Nuance asked whether MModal would agree that the same standard would apply in its Georgia litigation, and proposed agreeing to a stay in Delaware so long as the parties jointly requested a new trial date in November 2020 (or the earliest date thereafter when the Court is available) and MModal agreed to a stay in Georgia if any of Nuance's IPRs filed against MModal's patents were instituted. Ex. 1. MModal rejected this proposal and the notion that the same standard should apply in both cases, thereby confirming that this stay motion is truly about moving the Georgia case ahead of Delaware—and not about equitable and efficient adjudication of the parties' claims and counterclaims. *See* Ex. 2. Simply put, allowing MModal's case in Georgia to proceed ahead of the present case would give MModal an unfair tactical advantage and would be an inequitable result given that seven of Nuance's seventeen asserted claims in this case are not subject to an IPR.

## V. CONCLUSION

For the reasons set forth above, Nuance respectfully requests that the Court deny MModal's motion to stay.

|  |  |
|---|---|
| | Respectfully submitted, |
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| David J. Lender<br>Anish R. Desai<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000 | By: */s/ Bindu A. Palapura*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE 19801<br>    Tel: (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    sobyrne@potteranderson.com |
| Stephen Bosco<br>Megan H. Wantland<br>WEIL GOTSHAL & MANGES, LLP<br>2001 M Street, NW Suite 600<br>Washington, DC 20036<br>Tel: (202) 682-7000 | *Attorneys for Plaintiff*<br>*Nuance Communications Inc.* |
| Amanda Branch<br>WEIL GOTSHAL & MANGES, LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Tel: (650) 802-3000 | |
| Dated: March 15, 2019<br>6111030 / 43964 | |