**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NUANCE COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:17-cv-1484-MN |
| v. | ) | |
| | ) | |
| MMODAL LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO STAY PENDING *INTER PARTES* REVIEW

Dated:  March 22, 2019

**DUANE MORRIS LLP**

Richard L. Renck
rlrenck@duanemorris.com
222 Delaware Avenue
Suite 1600
Wilmington, DE  19801
Telephone.:  (302) 657-4900

*Counsel for Defendant MModal LLC*

**OF COUNSEL:**

Michael R. Gottfried (admitted *pro hac vice*)
mrgottfried@duanemorris.com
Anthony J. Fitzpatrick (admitted *pro hac vice*)
ajfitzpatrick@duanemorris.com
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110
Telephone: (857) 488.4200

Alison Haddock Hutton (admitted *pro hac vice*)
ahhutton@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: (404) 253-6900

A stay of this litigation pending the outcome of the three instituted IPR proceedings will streamline this case and will not prejudice Nuance.  Nuance has not rebutted those facts, arguing instead that MModal is seeking an "unfair tactical advantage" concerning an unrelated case pending in Georgia in which no IPR proceedings have been instituted.  For the reasons below and set forth in MModal's opening brief (D.I. 193), this Court should grant MModal's motion.

## I.      The Undisputed Facts Weigh in Favor of a Stay

Nuance does not (and cannot) contest the following material facts that compel the conclusion that a stay is appropriate:

- The PTAB has concluded there is a reasonable likelihood that MModal will invalidate at least one asserted claim in each of the three Challenged Patents.

- IPRs have been instituted on all asserted claims of each of the Challenged Patents.

- In light of the institution, there is a 64% likelihood that the PTAB will determine that all of the asserted claims of the Challenged Patents are unpatentable. (Ex. A.)

- The PTAB will issue a final written decision on the Challenged Patents on February 20, 2020, before the currently-scheduled trial date.[1]

- If the PTAB finds that all of the claims in the Challenged Patents are invalid, then a majority of the currently asserted claims (ten out of seventeen) would be invalidated.

- If MModal prevails in the IPRs, then a majority – ten out of fifteen—of the claim construction issues proposed by the parties will be resolved.

- If the asserted claims of one or more of the Challenged Patents are invalidated, the technology at issue in the case would be narrowed because different technology is accused for each of the patents-in-suit.

- The only unchallenged patent, the '295 Patent, expires in less than two months.

---

[1] As indicated in MModal's opening Motion (D.I. 193 at 15), MModal will report to the Court immediately after the final IPR decisions are instituted and request a status conference to discuss next steps.  Thus, Nuance's suggestion that the requested stay would be open-ended or necessarily longer than a year is incorrect.

- The Court has not yet conducted a claim construction hearing, fact discovery does not close for several months, and expert discovery and dispositive motion practice are many months in the future.

- The parties have not taken any depositions.

- Absent a stay, this Court will engage in claim construction for terms that the PTAB may invalidate or Nuance may amend.

- MModal timely filed its IPR petitions after Nuance served its initial claim narrowing and moved for a stay only eight days after IPRs were instituted on all of the Challenged Patents.[2]

- Nuance waited up to five years before filing suit on the accused MModal products and did not seek preliminary injunctive relief, belying any claim of prejudice from a stay.

## II.    Nuance's Arguments Against a Stay Are Strawmen

Unable to challenge the facts above, Nuance has manufactured reasons to oppose the stay. First, Nuance erroneously claims that the '295 Patent, which expires in less than two months, are so "unique" that this case should proceed.  Second, Nuance contends that MModal's state law counterclaims, which allege that Nuance's suit is objectively baseless and brought in bad faith, will not be informed by the outcome of the IPRs.  Third, Nuance speculates, despite evidence to the contrary, that the IPRs will not streamline the case.  Fourth, Nuance points to its recently-served deposition notices and its one-sided "compromise" proposal to contend the case is not in its early stages and that MModal is seeking a stay for tactical advantage.  Finally, Nuance contends that the well-pleaded factual allegations in MModal's counterclaims are too "inflammatory" for a stay to be appropriate.  None of these assertions weigh against a stay.

---

[2] Nuance suggests that it was nefarious of MModal to "front-load" its invalidity case.  To the contrary, MModal filed its IPRs early in the case in order to ensure that if any IPRs were instituted, a stay could be sought before the current trial date and before discovery was complete in order to secure the greatest possible case efficiencies.  Further, it is noteworthy that in the case brought by MModal against Nuance in the Northern District of Georgia, Nuance waited until days before the one-year statutory deadline to complete filing IPRs against MModal's asserted patents.

### A.    The '295 Patent Is "Unique" Only in That it Expires in Six Weeks

The fact that a minority of the asserted claims, from a soon-to-expire patent, will not be impacted by the IPRs does not mean that the IPRs will not simplify this case.  This Court has recognized that stays are appropriate under these exact circumstances.  (*See* D.I. 193 at 7-9).  A stay is especially appropriate here because Nuance delayed for years before asserting the '295 Patent against MModal and because the '295 Patent will expire in May 2019, less than two months from now and almost one year before the scheduled trial date.

The cases Nuance cited do not compel a different result.  Each is factually distinguishable from the present case because they involved an accused infringer's unclean hands, wholly unrelated claims that would not be impacted by the IPRs, or a much more advanced case posture. For example, in *Courtesy Prod., LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 13-2012, 2015 WL 5145516 (D. Del. Sep. 1, 2015), the Court concluded that due to the parties' prior licensing history of the patents-in-suit, defendant's request for a stay was not made in good faith and would cause undue prejudice to plaintiff.  *Id.* at *2 ("Hamilton Beach is now using every procedural tool at its disposal to attempt to invalidate patents that it licensed for years.").  In *f'real Foods, LLC v. Hamilton Beach Brands Inc..* C.A. No. 16-41-GMS, 2017 WL 10619854 (D. Del. Mar. 9, 2017), unrelated trademark claims were asserted that would not have been disposed of or informed by the outcome of the IPRs.  Finally, in *Plastic Omnium Advanced Innovation and Research v. Donghee America, Inc.*, C.A. No. 16-187-LPS, D.I. 278 (D. Del. Mar. 19, 2018), the Court denied the defendants' renewed motion to stay because the Court had already construed the parties' claim terms and begun reviewing the parties' summary judgment and *Daubert* motions, fact and expert discovery were essentially complete, and the IPRs would not be concluded until well after trial.[3]

---

[3] The non-precedential *Largan Precision Co. v. Fujifilm Corp.* case, which involved a declaratory judgment plaintiff's request to stay only <u>part</u> of a case, was denied because, among other things,

The allegedly "unique facts" about the '295 Patent that Nuance insists weigh against a stay are of little import.  The '295 Patent does not implicate "every accused product still at issue in the litigation."  Nuance's complaint alleges that a discrete and separate set of transcription products infringe the '933 and '034 Patents.  (D.I. 163 at 3-7).  While Nuance contends that the '295 Patent "accounts for almost half of Nuance's asserted claims," that is the case only because Nuance dropped its claims with respect to the '126 and '158 Patents (in response to MModal's IPR petitions) and the remaining patents do not have as many claims available to assert.[4]  Moreover, of the seven asserted claims from the '295 Patent, only one (claim 1) is an independent claim – the other six are dependent from claim 1 and thus only claim narrower versions of the same invention.  This is confirmed by the fact that Nuance accuses the same product functionality of infringing all of the asserted claims of the '295 Patent.  Finally, the accused functionality for the '295 Patent is completely different from the functionality at issue for the Challenged Patents.  Therefore, a stay of the case to resolve the validity of the Challenged Patents will likely result in a narrowing of the accused product functionality and a narrowing of the overall case, despite the fact that the '295 Patent is unchallenged.

## B.     The Outcome of the IPRs Will Inform MModal's Counterclaims

While Nuance is correct that MModal's state law counterclaims "cannot be resolved by the PTAB," that does not mean that the outcome of the IPRs will not inform the Court whether Nuance's patent infringement lawsuit was objectively baseless.  Determining whether Nuance's

---

"if a limited stay were granted, the parties and the Court would be required to fully litigate the '654 Patent, while deferring the litigation of the '658 Patent."  No. C 10-1318 SBA, 2011 WL 794983, *3 (N.D. Cal. Mar. 1, 2011).  The complete stay of the case that MModal is requesting would not present such inefficiencies.

[4] Before Nuance dropped those patents from the case, under its preliminary election of asserted claims, the '295 Patent accounted for only seven out of twenty-three total asserted claims.

infringement claims are objectively baseless requires an evaluation of the strength of Nuance's infringement claims. Such an analysis includes determining whether the patents that Nuance has asserted against MModal are valid. If the PTAB determines that one or more of Nuance's Challenged Patents are invalid, the Court may consider that fact in evaluating MModal's counterclaims (just as the Court may consider the fact that Nuance voluntarily disclaimed the asserted claims of the '158 and '126 Patents after MModal merely <u>filed</u> IPRs against them). If the PTAB determines that the Challenged Patents are valid, that fact will also be relevant to the Court as it relates to the prior art at issue in the IPRs.

These facts make this case distinct from the cases Nuance cites, in which counterclaims were asserted that were completely unrelated to the patent infringement claims, only a partial stay of the case was sought, or the Patent Office had declined to review some of the challenged patent claims. *See f'real Foods,* 2017 WL 10619854 at *1 n. 4 (trademark infringement counterclaim at issue); *Courtesy Prod.*, 1:13-cv-02012-SLR-SRF, Dkt. 94 (Mar. 2, 2016) (defendant filed IPRs against three patents-in-suit; PTAB did not institute IPR as to one patent and as to two claims of a second); *Largan*, 2011 WL 794983, at *3 (only partial stay sought and thus remaining un-stayed patent claims not resolved by stay); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) (Lanham Act and other California state law claims asserted that were "completely unrelated to patent infringement" and thus would not be simplified by a stay). In each of these cases, the outcome of the IPRs was going to have no impact on the patent claims that were not stayed or on the defendants' unrelated, non-patent counterclaims.[5] The same is not true here, where the results

---

[5] Nuance erroneously cites *Rothschild* in support of its argument that "the same remaining fact and expert discovery will need to take place as to the IPR Patents regardless of the outcome of the IPRs, and the Court will still need to perform claim construction." (D.I. 198 at 8). That decision concerns defendant's request for attorneys' fees under the "exceptional case" standard, not a request for stay pending IPRs or abuse of litigation or unclean hands counterclaims. *Rothschild*

of the IPRs will no doubt inform, and simplify, the case as it relates to MModal's counterclaims.

### C.    The IPRs Will Have a Material Impact On the Case

Nuance is correct that the parties' joint claim construction brief and technology tutorials have already been filed with the Court and that certain of Nuance's arguments in response to the IPR petitions have been included in that briefing.  However, Nuance is incorrect to suggest that no additional information pertaining to claim construction will become available during the IPRs.

On or before May 20, 2019, Nuance will have to respond to the IPRs and/or amend the claims at issue in the IPRs.  Because those submissions will take positions on the scope of the patent claims and/or alter the scope of the asserted claims, it will undoubtedly include material relevant to claim construction and Nuance's infringement allegations.  For Nuance to call that May 20 filing of "speculative" impact, or to suggest that it is necessarily duplicative of the IPR materials included in the existing record, is wrong.  Because the Court has not yet held a claim construction hearing, the additional intrinsic evidence developed and any claim scope alteration that occurs in that filing or later in the IPRs can be considered after a stay with minimal impact on the parties and Court.  By comparison, if the case is not stayed, it is highly likely that the Court will see post-claim construction motion practice on issues related to Nuance's positions taken in the IPRs, and the PTAB's final decisions in those proceedings.

Nuance also asserts that the IPRs will not simplify the asserted claims because it is only speculative that all of the challenged claims will be invalidated.  First and foremost, this is far from

---

*Mobile Imaging Innovations, LLC v. Mitek Systems, Inc.,* C.A. No. 14-617-GMS, 2018 WL 3599359 (D. Del. Jul. 27, 2018).  Under the exceptional case standard, the Court refused to reward attorneys' fees because plaintiff had voluntarily dismissed the Complaint before the Court had completed claim construction and any expert testimony or briefing on the merits of the complaint had been submitted.  *Id.* at *4.  This decision does not stand for the proposition that claim construction, expert testimony, or briefing on the merits is required for MModal's state law counterclaims in the event that the Challenged Patents are invalidated by the PTAB.

speculation – the PTAB has found that MModal has shown a reasonable likelihood of prevailing in establishing the unpatentability of at least one challenged claim in each of the Challenged Patents and the U.S. Patent Office's statistics cited above show that there is a significant likelihood that all asserted claims of the Challenged Patents will be invalidated.  Second, even if the PTAB does not invalidate all of the challenged claims, a stay pending the IPRs will still simplify the issues in this case because the PTAB and Nuance will be addressing each and every asserted claim for the Challenged Patents as part of the IPR proceedings.  *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018) (PTAB when conducting an *inter partes* review must make judgment on all patent claims contested by the petitioner); *AC Techs. S.A. v. Amazon.com, Inc.*, No. 2018-1433 (Fed. Cir. 2019) (final written decision from PTAB must address all claims challenged by a petition and all grounds of unpatentability raised in the petition).  Even if the claims are not invalidated, the process of PTAB review will have case narrowing effects as it relates to the scope of MModal's asserted prior art.  Third, in light of the above, Nuance's arguments about the standard of review that is applied by the PTAB for claim construction and its "reasonable likelihood" conclusions in the institution decision are beside the point.  They do not have an impact on whether or not the IPRs will simplify the issues in this case (which they will).

### D.    This Case Is in its Early Stages

Nuance cannot deny that many deadlines in the Scheduling Order remain in the future, including this Court's claim construction hearing, the close of fact discovery, expert discovery, dispositive motion practice, and trial.  In fact, most of these dates remain <u>far</u> in the future, months or even a year away.

While Nuance is correct that the deadline for substantial completion of document production has passed, Nuance knows that this process is ongoing, having produced over 45,000 documents to MModal on March 18, 2019, and served additional requests for production on

MModal on January 28, 2019.  (D.I. 166; Ex. B).  As of the filing of MModal's Motion to Stay, Nuance had served only one admittedly incomplete 30(b)(6) deposition notice on MModal, and no depositions had been taken by either party.  (D.I. 193 at 12).  The six additional depositions that MModal requested on March 4, 2019, three days <u>after</u> MModal filed its Motion to Stay and in a transparent response to this motion, have not yet been scheduled.[6]  Therefore, despite Nuance's attempts to argue otherwise, this case is indisputably in early stages.

###   E.     A Stay Will Not Prejudice Nuance

Nuance recognizes that it cannot credibly rely on its status as MModal's competitor to oppose a stay given the many years it delayed in bringing its infringement suit.  Instead, Nuance points to MModal's counterclaim allegations to allege that it will suffer harm to its reputation if this Court grants a stay.  These arguments are meritless.

MModal asserted the counterclaims at issue in response to a long-delayed and objectively baseless suit brought <u>by Nuance</u>.  MModal provided detailed allegations in support of those counterclaims in response to Nuance's motion to dismiss for failure to state a claim.  Nuance has had its opportunity to deny and respond to MModal's allegations, and will have an opportunity to present its case against those allegations at the same time that MModal is able to respond to Nuance's objectively baseless patent infringement allegations.

Nuance also elected to distribute an overbroad and inaccurate press release about this suit (which remains on Nuance's website to this day, *see* https://www.nuance.com/about-us/newsroom/press-releases/nuance-files-lawsuit-against-m-modal.html).     Having made the

---

[6] Nuance misleadingly suggests that the first of the depositions is going to take place on March 25th.  The first noticed deposition date of March 25 was unilaterally selected by Nuance for a 30(b)(1) notice to MModal employee Dori Whittaker that it served on March 4, 2019.  That date is not convenient for the witness as she is out of the office on business travel the week of March 25, and it will not take place on that date.

choice to bring this suit and publicize it, Nuance cannot use the defenses asserted in response to its allegations as a reason not to stay this case.

Moreover, to the extent that Nuance truly considers the allegations improperly "inflammatory," a less drastic remedy would be to seek redaction of the relevant allegations. Nuance asked for no such redactions from MModal or this Court, nor did it complain in its motion to dismiss the counterclaims that the allegations were improper or would cause it reputational damage. Nuance's failure to raise these arguments until now make clear that its concern about these allegations' effect was manufactured to support its opposition to a stay.

### F. Nuance Has Presented No Evidence that MModal Is Seeking an Improper "Tactical Advantage" by this Stay

Unable to point to any evidence that MModal is seeking a "tactical advantage" through its behavior in this case, Nuance speculates about MModal's intentions with respect to a different case in a different district and about the outcome that a stay here might have on that case. But the Northern District of Georgia matter, which concerns different MModal and Nuance patents, has no bearing on the present motion.

As part of an admitted tactic to "test MModal," Nuance made a "compromise proposal" to MModal on March 4, 2019. (Ex. C). This proposal – which came after the motion had been filed – asked MModal to agree (in advance) to a stay in the Georgia case if any of Nuance's four petitions for IPR filed against MModal's asserted patents were instituted in the future. Thus, the proposal unfairly sought MModal's agreement to a stay without any information about the factual circumstances that would be present at the time of such a stay. Under Nuance's proposal, MModal would have to agree to a stay of the Georgia case even if only one of Nuance's four IPRs is instituted, and regardless of when in the case the institution decisions are received.

Importantly, the status of the Georgia case when and if those IPRs are instituted is likely to be significantly different from the facts present here.  Two of Nuance's four IPR petitions on MModal's patents asserted in the Georgia case were just filed two weeks ago, after the parties had completed claim construction briefing on March 2, 2019.  The earliest institution decision on any of Nuance's petitions is not expected until July 24, 2019, and the latest is not due until September 14, 2019.  The institution decisions will likely issue after the Georgia case's claim construction hearing and potentially after the close of fact discovery.

Thus, Nuance's "compromise proposal" was exactly what it was intended to be – an unfair litigation "tactic."  It asked MModal to commit to a stay of the unrelated Georgia case based on incomplete information and regardless of the number of Nuance IPRs instituted or when they are instituted.  It did not ask MModal to consent to a stay based on the "same standard" as would apply here.  Nuance's attempt to use its one-sided "compromise proposal" as a basis to deny a stay is a strawman and should be disregarded.

## III.    Conclusion

For all of the foregoing reasons, and for the reasons set out in MModal's Opening Brief in Support of its Motion to Stay Pending *Inter Partes* Review, all of the factors that this Court considers support a stay pending conclusion of the IPRs on the Challenged Patents.  MModal respectfully requests that the Court grant its motion.

Dated:  March 22, 2019

Respectfully submitted,

**DUANE MORRIS LLP**

_/s/ Richard L. Renck_____
Richard L. Renck (#3893)
Duane Morris LLP
222 Delaware Avenue
Suite 1600
Wilmington, DE  19801
Tel.:  (302) 657-4900
rlrenck@duanemorris.com

_Counsel for Defendant MModal LLC_