01:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


NUANCE COMMUNICATIONS, INC.,  )
                              )
            Plaintiff,        )
                              ) C.A. No. 17-1484(MN)
v.                            )
                              )
MMODAL, LLC,                  )
                              )
            Defendant.        )


                    Monday, April 8, 2019
                    9:22 a.m.
                    Motion to Stay Hearing


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


            POTTER, ANDERSON & CORROON, LLP
            BY:  BINDU ANN GEORGE PALAPURA, ESQ.

             -and-

            WEIL GOTSHAL & MANGES, LLP
            BY:  DAVID J. LENDER, ESQ.
            BY:  ANISH R. DESAI, ESQ.
            BY:  SUDIP K. KUNDU, ESQ.
            BY:  STEPHEN BOSCO, ESQ.


                    Counsel for the Plaintiff

1

APPEARANCES CONTINUED:

2

3

4              DUANE MORRIS, LLP
               BY:  RICHARD L. RENCK, ESQ.
5              BY:  ANTHONY FITZPATRICK, ESQ.
               BY:  MICHAEL GOTTFRIED, ESQ.
6              BY:  ALISON HADDOCK HUTTON, ESQ.
               BY:  JARRAD M. GUNTHER, ESQ.
7              BY:  DANIEL TARR, ESQ.

8
                        Counsel for the Defendant
9

10

11

12

13                       - oOo -

14              P R O C E E D I N G S

15              (REPORTER'S NOTE:  The following hearing was

16     held in open court, beginning at 9:22 a.m.)

17

18

09:22:20 19

09:22:37 20             THE COURT:  Good morning.  Please be seated.

09:29:49 21             Let's start with some introductions.

09:29:54 22     Ms. Palapura.

09:29:55 23             MS. PALAPURA:  Good morning, Your Honor.  Bindu

09:29:59 24     Palapura from Potter Anderson on behalf of plaintiff, Nuance

09:30:03 25     Communications.  And with me today from Weil Gotshal &

09:30:06 1    Manges is David Lender.

09:30:07 2              MR. LENDER:  Good morning, Your Honor.

09:30:08 3              THE COURT:  Good morning.

4              MS. PALAPURA:  Anish Desai.

5              MR. DESAI:  Good morning.

6              THE COURT:  Good morning.

09:30:15 7              MS. PALAPURA:  Sudip Kundu, and Stephen Bosco.

09:30:15 8    Also with us from Nuance is Dave Greenbaum.

09:30:18 9              THE COURT:  Good morning.

09:30:24 10             MR. RENCK:  Good morning, Your Honor.

09:30:25 11             THE COURT:  Good morning.

09:30:26 12             MR. RENCK:  Richard Renck from Duane Morris here

09:30:28 13   in Wilmington on behalf of defendant MModal.  I have with me

09:30:32 14   today my colleagues from Duane Morris, Tony Fitzpatrick,

09:30:36 15   Mr. Michael Gottfried, Ms. Alison Hutton, Daniel Tarr and

09:30:43 16   Jarrad Gunther.  We also have two representatives from the

09:30:46 17   inhouse department at 3M who is the owner of MModal now, we

09:30:50 18   Christina Wang and Eileen Hunter.

09:30:51 19             THE COURT:  Welcome.

09:30:52 20             MR. RENCK:  Thank you, Your Honor.

09:30:53 21             THE COURT:  Thank you.

09:30:55 22             So we are here on the motion to stay as well as

09:31:01 23   Markman issues.  And I did get the letter that you all

09:31:05 24   submitted and I appreciate that you agreed on a few more

09:31:08 25   terms.  But I thought after reading the papers we should

09:31:14 1   start with the motion to stay.  So I will hear that first.

09:31:31 2             MR. GOTTFRIED:  May I hand you up a slide?

09:31:33 3             THE COURT:  Yes, please.

09:31:35 4             MR. GOTTFRIED:  Thank you, Your Honor.

09:31:54 5             THE COURT:  You may proceed.

09:31:55 6             MR. GOTTFRIED:  Good morning, Your Honor.  I

09:31:58 7   think the stay motion is certainly briefed in the papers,

09:32:01 8   but I wanted to just take a few minutes to highlight a

09:32:05 9   couple of what we think are the most important points for

09:32:07 10  the Court that spoke to a stay.

09:32:11 11            As the Court is well aware, you have broad

09:32:15 12  discretion to issue a stay.  That's the Ethicon case.  And

09:32:21 13  in determining whether you should exercise that discretion,

09:32:24 14  there are really three issues that you need to look at.  The

09:32:26 15  first is whether a stay will simplify the issues in question

09:32:31 16  and the trial of the case.  We think that's very strongly in

09:32:35 17  favor of the stay.

09:32:36 18            The second is whether discovery is complete and

09:32:38 19  whether a trial date has been set.  Again, we also think

09:32:42 20  that speaks strongly in favor of a stay.  And the third is

09:32:45 21  whether a stay would unduly prejudice or present a clear

09:32:49 22  tactical disadvantage to the nonmoving party.  Again, we

09:32:54 23  think that strongly favors a stay in this case.  We want to

09:32:57 24  highlight for the Court a couple of what we think are key

09:33:01 25  facts that are undisputed in our view in this case that

09:33:05 1    speak to the stay.

09:33:06 2          As the Court knows, IPRs have been instituted on

09:33:13 3    all asserted claims of three patents of the four remaining

09:33:16 4    in the case, the '933, '034, and the '946.

09:33:21 5          The outcome of these three IPRs could eliminate

09:33:26 6    these entire patents and accused technology from the case,

09:33:29 7    or simplify the case due to estoppel effects.  I think the

09:33:35 8    institution decision in the '034 patent is particularly

09:33:38 9    instructive to the Court.  At page eight of that decision,

09:33:45 10   the institution ruling states, "For the reasons explained

09:33:50 11   below, we determined that even if claim 8 requires

09:33:54 12   everything the patent owner contends, petitioner has

09:33:59 13   demonstrated a reasonable likelihood of establishing that

09:34:02 14   the challenge claims would have been obvious."

09:34:05 15         So if that holds true to course, that patent

09:34:07 16   would be found invalid.  But just as importantly because you

09:34:10 17   can't presume that necessarily, they go on to say,

09:34:14 18   "Nonetheless, we welcome further briefing regarding whether

09:34:18 19   the challenge claims require simultaneous display of the

09:34:24 20   audio cursor and the text cursor.  Additionally.  We welcome

09:34:27 21   briefing on the broadest reasonable interpretation of the

09:34:30 22   claim term, cursor itself."

09:34:33 23         So looking at the '034 as a paradigm, there is a

09:34:37 24   possibility that patent gets eliminated.  Certainly we would

09:34:41 25   estopped with respect to the art that is reviewed by the

09:34:43 1   Patent Office.  But finally, given what the Patent Office

09:34:46 2   has specifically asked for, the intrinsic record will be

09:34:50 3   broader and more fulsome if that patent has to go to trial.

09:34:55 4           THE COURT:  These are IPRs that are based I

09:34:57 5   think as you just said, broadest reasonable interpretation,

09:35:00 6   so the claim construction standard is not the same as the

09:35:04 7   one I would be looking at with respect to the IPRs; right?

09:35:09 8           MR. GOTTFRIED:  That's true, Your Honor.

09:35:11 9   However, if they're invalidated, they are out of the case,

09:35:14 10  so we still think the intrinsic record would be helpful to

09:35:17 11  the Court if they're not.

09:35:18 12          THE COURT:  Let me just ask this since you said

09:35:20 13  if they're invalidated they would be out of the case.  One

09:35:24 14  of the issues that the plaintiff has raised is you have the

09:35:26 15  counterclaims.

09:35:27 16          MR. GOTTFRIED:  Yes, Your Honor.

09:35:28 17          THE COURT:  And I'm not sure I understand what

09:35:33 18  would happen, let's assume that the patents are invalidated,

09:35:38 19  so I just want to make sure if you're coming back, you're

09:35:43 20  not coming back to relitigate where we are going to now show

09:35:47 21  that those patents were never infringed, we're not going to

09:35:50 22  be dealing with infringement of invalid patents or

09:35:52 23  something, so can you explain to me how you expect it to

09:35:55 24  play out in either the circumstance where the patents are

09:35:59 25  not found to be invalid or where they are.

09:36:02  1          MR. GOTTFRIED:  So let me just advance quickly

09:36:05  2  to a slide because I actually have a slide that deals with

09:36:09  3  -- I thought I had a slide that deals with that.

09:36:16  4          Here we go.  Here is the slide that deals with

09:36:18  5  that, Your Honor.  So as the Court knows, when the case was

09:36:23  6  filed, there were six patents-in-suit.  After we filed --

09:36:27  7          THE COURT:  I know, they got rid of two.  I have

09:36:30  8  read all the papers.

09:36:31  9          MR. GOTTFRIED:  They got rid of two.

09:36:33 10          THE COURT:  Down to four.

09:36:34 11          MR. GOTTFRIED:  Now we're down to the four.  We

09:36:36 12  have the one pending.  We have the three instituted.  I

09:36:39 13  think the point is is that first of all, the counterclaim is

09:36:43 14  looking pretty good.  There is a strong possibility now

09:36:46 15  that, 64 percent statistics, but that five out of the six

09:36:51 16  patents that they originally brought would be found to be

09:36:53 17  invalid on one ground or another.

09:36:56 18          And that would be the -- so that -- when you

09:36:59 19  talk about simplifying the case and focusing what needs to

09:37:03 20  be done with respect to the counterclaim, these IPRs would

09:37:08 21  absolutely do that, because the only other patent is the

09:37:12 22  '295 which expires in about a month from now.  And that's a

09:37:16 23  patent that they actually went to trial on and non-infringed

09:37:20 24  which we think we have good invalidity grounds on that, we

09:37:24 25  think we have good non-infringement grounds on that.

09:37:26 1              So I think the focus of the counterclaim and the

09:37:28 2     weight of the IPRs if all those three initial patents are

09:37:33 3     invalidated would be on that point and we would not be

09:37:35 4     litigating whether they were infringed as well, it would be

09:37:38 5     sufficient to show that five out of the six patents that

09:37:41 6     they brought were invalid.  That would be the focus.

09:37:44 7     Conversely, if they're not invalidated, that would be a

09:37:48 8     point that I'm sure Nuance would want to highlight with

09:37:52 9     respect to that.

09:37:53 10             THE COURT:  If they're not invalidated,

09:37:55 11    presumably you would be trying infringement anyways to the

09:37:58 12    jury so you could make those arguments --

09:38:00 13            MR. GOTTFRIED:  That's correct, Your Honor.

09:38:01 14            THE COURT:  -- with respect to those.

09:38:03 15            MR. GOTTFRIED:  That's correct, Your Honor.

09:38:04 16             Listen, there is a tremendous amount of work

09:38:07 17    that still needs to be done in this case.  You know, we

09:38:10 18    haven't even completed document production.  We certainly

09:38:13 19    haven't had the close of fact discovery; not a single

09:38:16 20    deposition has been taken.  Expert discovery has not

09:38:19 21    occurred.  Focusing this case post IPR on what's left, or

09:38:26 22    what's enhanced by whatever those rulings are, makes the

09:38:30 23    most sense for the Court and for the parties.

09:38:33 24             You know, and indeed, although Nuance, you know,

09:38:38 25    argues that they're prejudiced if the stay is granted, as

09:38:42  1    the Court knows from the papers, they proposed a deal where

09:38:45  2    they would agree to the stay which I think belies how

09:38:48  3    prejudicial a stay would be.  I think the reality is that

09:38:51  4    the stay makes good common sense because it's impossible

09:38:55  5    really to argue that after these IPRs are decided that the

09:39:00  6    landscape is not changed in material ways that will affect

09:39:03  7    the future proceedings in the case.

09:39:04  8            So --

09:39:06  9            THE COURT:  Are you -- the related litigation.

09:39:11 10            MR. GOTTFRIED:  Yes, Your Honor.

09:39:12 11            THE COURT:  They proposed a deal for you, I

09:39:15 12    think you just alluded to that, and you guys said no, no,

09:39:21 13    no, we don't know what's going to happen there.  We don't

09:39:23 14    know if it's going to make sense or not.  Explain to me why

09:39:27 15    that isn't somehow -- that that doesn't appear that you're

09:39:31 16    trying to get a tactical advantage where you want to move

09:39:35 17    ahead in your case but prevent them from moving ahead in

09:39:39 18    theirs.

09:39:39 19            MR. GOTTFRIED:  Sure.  Happy to answer that

09:39:41 20    question, Your Honor.  I think there are several points to

09:39:43 21    be made about that.  I think first in examining whether

09:39:45 22    there is a tactical advantage or prejudice, look first at

09:39:49 23    our conduct in this case.  Six patents are sued on.  Within

09:39:54 24    eight to nine months we file five IPRs.  As you know, two

09:39:58 25    are gone, three get issued, in a span of about

09:40:01 1   two-and-a-half weeks, within I think it's eight days of that

09:40:06 2   IPR, the last IPR being instituted, we're moving to stay.

09:40:10 3   Of course, before that, we're meeting and conferring and the

09:40:13 4   like.  So in terms of our activity in this case, I think we

09:40:16 5   acted very, very promptly.

09:40:18 6           Now, let's see where Georgia is.  In Georgia,

09:40:23 7   they waited for two of the four patents that MModal sued

09:40:27 8   them on until two days before the one-year deadline expired.

09:40:31 9   So if there is a party here that is engaged in gamesmanship

09:40:35 10  and strategy if you will with respect to this, I would

09:40:39 11  submit that it's Nuance and not us.

09:40:41 12          When you look at the Georgia case, I don't think

09:40:44 13  it's -- I know it's not MModal's position that we would

09:40:48 14  never consider a stay in that case.  I think our position

09:40:51 15  is, let's look at where we are on the ground right now.  No

09:40:57 16  IPRs have been instituted in Georgia at all.  We don't know

09:41:00 17  what the state of play will be in that case if any are

09:41:03 18  instituted.  For example, the discovery schedule in that

09:41:08 19  case and the schedule in that case generally pivots off a

09:41:11 20  Markman decision, which we don't have a date for.  And so we

09:41:16 21  don't know where that case will be.  That case could be in a

09:41:20 22  situation when the IPRs are instituted where it might make

09:41:24 23  good sense to do it, or it might be that that case is so far

09:41:28 24  advanced or only one IPR is instituted that it doesn't make

09:41:33 25  sense.

09:41:33 1          Our view is really that it is premature to make

09:41:36 2     that decision now, that each of these cases should we would

09:41:40 3     submit be looked at individually on their own facts.  And

09:41:42 4     what we were simply saying was the facts on the ground right

09:41:45 5     now where we don't know if it's one or four or three or two

09:41:50 6     that are going to be instituted or where that case will be

09:41:52 7     in the schedule doesn't make sense to agree to that now.

09:41:56 8     But it may be as those facts develop, it might be

09:41:59 9     appropriate; can't say one way or the other right now, but

09:42:02 10    to agree now doesn't make sense.  Because in this case when

09:42:05 11    you focus on where we are in this case with so much still to

09:42:09 12    be done and with all of the three challenge patents

09:42:12 13    instituted, in this case it makes sense regardless of what

09:42:15 14    ultimately happens in Georgia.

09:42:17 15         THE COURT:  Okay.

09:42:20 16         MR. GOTTFRIED:  And again, you know, the big

09:42:23 17    takeaway for us is when you're talking prejudice, kind of

09:42:27 18    rings hollow when they're sitting there saying we agreed to

09:42:31 19    a stay.  So everything we say, well, we all agreed to a

09:42:35 20    stay.  I think, you know, let me go back and make sure I

09:42:38 21    pick up some of these points that I wanted to highlight for

09:42:42 22    you.

09:42:42 23         So we talked a little bit about where we are in

09:42:46 24    the case schedule.  We have talked a little bit about

09:42:50 25    prejudice already, but I think one point that we didn't

09:42:53 1    highlight is we're talking about the '295 patent, you know,

09:42:57 2    a patent that is really kind of ancient, that certainly for

09:43:02 3    more than five years or about five years, we were competing

09:43:05 4    side-by-side.  They did nothing about it.  Not dispositive,

09:43:09 5    they didn't seek preliminary relief, and certainly after May

09:43:14 6    10th they won't be able to seek preliminary relief, so

09:43:18 7    waiting on that for a damage award whether it be six months

09:43:21 8    later or whatever that time would be for the IPRs to be

09:43:25 9    decided is really not any great prejudice for them.

09:43:28 10           THE COURT:  And all of the IPRs should be

09:43:31 11   decided by February 20th?

09:43:33 12           MR. GOTTFRIED:  That is correct, Your Honor,

09:43:35 13   that's the last date for them to be decided.

09:43:37 14           I think this is also an important slide and an

09:43:38 15   important point.  This by the way is Nuance's tutorial.

09:43:42 16   That's why even if the '034 and the '933 get invalidated,

09:43:48 17   the entire technology regarding backend transcription and

09:43:55 18   correction of clinical narratives would be out of the case.

09:43:59 19   That would very much simplify it.  The 946, the '034 and

09:44:01 20   '933, integration of clinical data into structured

09:44:05 21   documents, again, that technology could potentially be out

09:44:07 22   of the case.

09:44:08 23           THE COURT:  Is the prior art for any of these

09:44:11 24   patents, does it overlap?

09:44:14 25           MR. GOTTFRIED:  Certainly the '034 and the '933

09:44:17 1    do.

09:44:17 2              THE COURT:  I'm sorry, in the three different

09:44:21 3    technology aspects?

09:44:22 4              MR. GOTTFRIED:  No.

09:44:23 5              THE COURT:  It does not?

09:44:24 6              MR. GOTTFRIED:  It does not.

09:44:25 7              THE COURT:  So if one of the patents -- so if

09:44:27 8    one of the patents were taken out of the case, that would

09:44:32 9    remove all of the prior art with respect to that?  I'm just

09:44:40 10   trying to make sure I understand.  I know there are

09:44:42 11   different products that these are asserted against, and I

09:44:46 12   just want to make sure the art is still -- we would be

09:44:51 13   getting rid of art if we did this.

09:44:54 14             MR. GOTTFRIED:  Absolutely.

09:44:55 15             THE COURT:  If something were --

09:44:57 16             MR. GOTTFRIED:  Yes.  Yes is the answer to that

09:44:58 17   question.

09:44:59 18             So, again, I think regardless of what happens,

09:45:04 19   we pointed to three things, invalidity, we talked about the

09:45:08 20   intrinsic record, we talked about estoppel on each of these

09:45:11 21   that would be significant.

09:45:12 22             We talked already about the simplification with

09:45:16 23   respect to the counterclaim.  I think that's definitely the

09:45:19 24   case.  The timeline slide, you know, I basically highlighted

09:45:23 25   that a little bit.  But we are here sort of a little left of

09:45:29 1   center in the middle.  Today is the claim construction

09:45:32 2   hearing.  But you haven't made a decision on claim

09:45:36 3   construction.  You haven't had to actually do that.  You

09:45:38 4   could certainly take all the information you get today and

09:45:45 5   decide to hold if that was your call.

09:45:46 6        But regardless of what you do on Markman, I

09:45:49 7   don't think that's dispositive in this case because of the

09:45:51 8   significant impact of three out of the four remaining

09:45:54 9   patents being instituted.  We're talking about end of fact

09:45:57 10  discovery June 15th.  As we said, not a single disposition

09:46:00 11  has taken place yet.  I think the first one is scheduled for

09:46:03 12  April 17th.  Expert discovery October 21st.

09:46:07 13       Just think about how the focus and the

09:46:09 14  efficiency of those two events, the conclusion of fact

09:46:15 15  discovery and expert discovery would be greatly enhanced by

09:46:19 16  knowing what happened with respect to the IPRs.  So let them

09:46:22 17  do their job.  That's why that procedure was put in place to

09:46:25 18  let people have a less expensive alternative here.

09:46:29 19       Dispositive motion deadline obviously impacted

09:46:31 20  by what happens in the IPRs.  Final jury instructions.  And

09:46:35 21  the last two dates as the Court has noted is February 20th

09:46:37 22  for the last IPR decision.

09:46:40 23       We talked a little bit again already about this,

09:46:44 24  about prejudice.  We went through the facts regarding the

09:46:47 25  timing of our request for review, the timing of the request

09:46:51  1    for the stay, talked about the status of those proceedings.

09:46:54  2         The relationship by the parties is obviously an

09:46:57  3    important issue in this case because we are competitors.

09:47:00  4    It's interesting, I went back and looked at their opposition

09:47:04  5    to see what they were saying about this.  It's interesting,

09:47:07  6    the only fact -- this struck me by the way.  The only fact

09:47:10  7    that they really rely on with respect to that we're

09:47:14  8    competitors is the cite to our counterclaim where we say

09:47:17  9    that we're competitors.

09:47:18 10         THE COURT:  There is no question that you guys

09:47:21 11    are very competitive.

09:47:23 12         MR. GOTTFRIED:  Absolutely, but not the focus of

09:47:25 13    their brief, they talk about well, they have these

09:47:27 14    inflammatory counterclaim allegations.  It goes without

09:47:32 15    saying, I looked at their website again this morning, their

09:47:35 16    press release is still on it.  You can still link to the

09:47:39 17    original complaint where two of the six patents are already

09:47:42 18    out.  You can go to our website, there is nothing about the

09:47:46 19    counterclaim in this case.  We have not been out there

09:47:48 20    publicizing it.  It's quite the opposite.

09:47:51 21         We have talked about the delay already.  And I

09:47:57 22    think you know here really is the ultimate point, yes, we're

09:48:00 23    competitors, but they were prepared to agree to a stay.

09:48:04 24         THE COURT:  Okay.

09:48:05 25         MR. GOTTFRIED:  Thank you, Your Honor.

09:48:06  1          THE COURT:  Thank you.

09:48:15  2          MR. DESAI:  Good morning, Your Honor.  Let me

09:48:22  3  start with the first factor of whether a stay would simplify

09:48:25  4  the issues for trial.  We don't really believe that's the

09:48:28  5  case here because we have the '295 patent which has seven of

09:48:32  6  the seventeen asserted claims, that they're not an IPR and

09:48:37  7  they're going to be tried we believe.  I think when we get

09:48:40  8  to the Markman hearing today, I think the Court will see the

09:48:42  9  claim construction positions that are being taken and that

09:48:45 10  in our view we're going to have a trial on that patent.

09:48:49 11          The second issue is that the asserted

09:48:53 12  counterclaims, they allege that the infringement claims in

09:48:55 13  this lawsuit are objectively baseless.  And I think both

09:48:59 14  parties have agreed in the briefs that this will require

09:49:03 15  evaluating the merits of the infringement case.  This is

09:49:06 16  from page 45 of MModal's reply brief they said, "Determining

09:49:12 17  whether Nuance's infringement claims are objectively

09:49:13 18  baseless requires an evaluation of the strength of Nuance's

09:49:17 19  infringement claims."

09:49:18 20          THE COURT:  Right.  But I think I just heard

09:49:19 21  them say that if the claims are held to be invalid in the

09:49:26 22  IPR, that they would not be asserting or asking for

09:49:31 23  infringement to be -- you know, to have a trial where they

09:49:38 24  would be arguing that it's objectively baseless and you have

09:49:42 25  to decide whether or not you should have asserted them for

09:49:45 1  infringement purposes, they would be instead focusing on

09:49:48 2  validity.

09:49:48 3           MR. DESAI:  I wasn't necessarily sure that was

09:49:50 4  the outcome of what counsel was saying.  I mean, I guess the

09:49:55 5  implication there is if the IPRs are granted -- sorry, if

09:49:59 6  the patents are found invalid, then the only issue would be

09:50:03 7  whether the lawsuit on both patents would be objectively

09:50:06 8  baseless because the patents are so clearly invalid.

09:50:10 9           THE COURT:  That's what I understood them to be

09:50:12 10  saying.

09:50:13 11           MR. DESAI:  If that's the situation, then I

09:50:15 12  guess the statement in their brief that requires evaluation

09:50:18 13  of the infringement claims.

09:50:19 14           THE COURT:  I suppose if the patents were not

09:50:21 15  found to be invalid at the IPR, then they wouldn't want to

09:50:24 16  focus on infringement, but then that issue would be before

09:50:27 17  the jury anyway.

09:50:28 18           MR. DESAI:  If we're taking that off the table,

09:50:30 19  it does change the situation a bit.  But nonetheless, I

09:50:34 20  think we're still going to have to have claim construction

09:50:37 21  on these patents, even if it's just focusing on the

09:50:40 22  invalidity aspect.  We're going to have expert discovery on

09:50:45 23  the --

09:50:45 24           THE COURT:  Can you explain to me if the patents

09:50:47 25  were -- assuming they were found to be invalid, I certainly

09:50:50  1   understand that if the patents come back, we need claim

09:50:52  2   construction on them.

09:50:53  3           MR. DESAI:  Right.

09:50:54  4           THE COURT:  But if the patents were found to be

09:50:56  5   invalid in the IPRs, would we need to have claim

09:50:59  6   construction?

09:50:59  7           MR. DESAI:  I believe we would because it's a

09:51:02  8   different claim construction standard.  The broadest

09:51:04  9   reasonable interpretation, there is a different --

09:51:06 10           THE COURT:  But the patents would be invalid.

09:51:08 11           MR. DESAI:  Right.  But the issue in the

09:51:10 12   counterclaims is whether our case was objectively baseless.

09:51:15 13   And the Patent Office uses a different standard for claim

09:51:18 14   construction, the Patent Office uses a different standard

09:51:21 15   for invalidity, preponderance of the evidence versus clear

09:51:24 16   and convincing.  I think we would still be litigating the

09:51:27 17   issue of whether our positions in this case in light of the

09:51:30 18   prior art were objectively baseless.

09:51:34 19           And to add to that, the prior art that's being

09:51:35 20   asserted in the '034 and the '933 IPRs is the prior art that

09:51:42 21   was examined by the examiner during the prosecution.  There

09:51:43 22   was only seven references before the examiner.  They are

09:51:47 23   relying on the exact same prior art which at one point in

09:51:51 24   time was blessed by the Patent Office, and then we have a

09:51:53 25   litigation and an IPR was filed and the Patent Office said

09:51:57  1    well, let's take another look.

09:51:58  2              THE COURT:  All of the art that is now before

09:52:01  3    the Patent Office was previously before the Patent Office?

09:52:04  4              MR. DESAI:  For the '933 patent and the '034

09:52:07  5    patents, the references they were relying on which was

09:52:10  6    Schulz and Sumner, definitely Schulz and I'm virtually

09:52:14  7    certain that Sumner was also before the Patent Office during

09:52:16  8    prosecution.  And it wasn't the situation where it was a

09:52:20  9    prosecution history where you had thousands of references

09:52:23 10    being cited, there were only seven references before the

09:52:26 11    examiner.

09:52:28 12              Ultimately the net conclusion is we're going to

09:52:32 13    be litigating over those patents regardless of the outcome

09:52:35 14    of the IPR.  It's not going to simplify anything in this

09:52:38 15    case.  I think the first factor weighs in our favor in

09:52:41 16    denying the stay.

09:52:43 17              The second issue is the status of the

09:52:45 18    litigation.  We are two months away from the close of fact

09:52:48 19    discovery, so it's not done, but I think we're 85 percent of

09:52:52 20    the way there, 80 percent of the way there.  A lot of money

09:52:55 21    has been spent producing documents, getting ready for

09:52:58 22    depositions which are starting next week.  If we pause this

09:53:01 23    case now, we're going to have to restart that.  And there is

09:53:04 24    inefficiency there.  These depositions are going to take

09:53:09 25    place regardless of what happens in the IPRs.  It's the same

09:53:11 1  witnesses for MModal, the same witnesses for Nuance.  We're

09:53:15 2  just delaying the depositions, we're not simplifying them.

09:53:19 3  That does not weigh in favor of a stay.

09:53:21 4      We already have a trial date.  That's one of the

09:53:24 5  factors, whether there is a trial date.  It is in April

09:53:28 6  2020.  I think the fortunate part there is it is after

09:53:32 7  February when the IPRs will come down, so there is

09:53:35 8  opportunity time there to take into account what happens in

09:53:38 9  the IPRs.  It would be a different situation if the IPRs

09:53:41 10 were being decided in May or June of 2020, I could see that

09:53:46 11 might be a reason to delay the trial a few months to get the

09:53:50 12 benefit of those decisions.  Here we're going to have the

09:53:52 13 benefit of those decisions in February and the trial will

09:53:55 14 take place in April.  And as I said, we're going to have a

09:53:58 15 trial in the '295 patent regardless.

09:54:00 16     The last issue is the issue of prejudice and

09:54:04 17 tactical advantage.  We do think that the Georgia case here

09:54:08 18 is driving a lot of this issue.  I mean, MModal could have

09:54:13 19 filed its patent infringement counterclaims in this district

09:54:17 20 and we could have had parity in the decision making.  But

09:54:20 21 they chose to go to Georgia.  Now there was some argument

09:54:23 22 that we waited to file our IPRs in that case and there are

09:54:28 23 circumstances there that warranted what we did which is when

09:54:31 24 MModal filed that case, they asserted over 130 claims.  We

09:54:37 25 fought quite hard to get an order in that case to narrow the

09:54:40 1   number of asserted claims.  That took a long time.  I think

09:54:43 2   it was only until October or November that we got an order

09:54:47 3   from the Georgia court reducing the number of asserted

09:54:51 4   claims from I think a hundred, it was well over a hundred to

09:54:54 5   down to about thirty.  Once we got the reduced set of

09:54:57 6   asserted claims, we proceeded to file IPRs in a few months.

09:55:03 7          So those are the circumstances that took place

09:55:04 8   in Georgia.  Frankly it's quite different from what happened

09:55:07 9   here in Delaware which was when we filed a case there was

09:55:11 10  agreement almost within a few months about getting a

09:55:14 11  schedule of a reasonable number of asserted claims, so there

09:55:16 12  was a very different set of facts that took place in Georgia

09:55:20 13  which is why it took longer to get those IPRs on file.  You

09:55:26 14  can imagine IPRs on 130 claims would have been unreasonable

09:55:29 15  and we wouldn't have been able to do that, so there was a

09:55:32 16  reason why it took a little longer.

09:55:35 17         So I think that allowing that case to proceed in

09:55:37 18  front of this one, particularly here where we have a patent

09:55:40 19  that is not an IPR that we're going to have a trial on does

09:55:44 20  present a tactical advantage to MModal.

09:55:48 21         THE COURT:  What about the argument that Nuance

09:55:50 22  waited five years before filing suit, so it was happy to

09:55:54 23  have that competition and now it's telling me, oh, no,

09:55:58 24  waiting a few more months is going to be a problem.

09:56:02 25         MR. DESAI:  SO the issue there was MModal was in

09:56:05 1    bankruptcy and when they came out of the bankruptcy, they

09:56:10 2    started transitioning their business from backend to

09:56:12 3    frontend, this is part of the case that we're developing the

09:56:15 4    discovery.  Prior to the bankruptcy, MModal was primarily a

09:56:20 5    backend transcription company and since the bankruptcy they

09:56:24 6    have been transitioning to the frontend which is why they

09:56:27 7    have been encroaching on Nuance's space within the past few

09:56:31 8    years.

09:56:31 9         THE COURT:  So they weren't competing with you

09:56:33 10   for that five-year period?

09:56:35 11        MR. DESAI:  I think the competition was

09:56:38 12   increased over that period of time is how I would frame it.

09:56:39 13        THE COURT:  Okay.

09:56:41 14        MR. DESAI:  So, you know, again, for the

09:56:44 15   prejudice issue I think it's more about the tactical

09:56:47 16   advantage of allowing the Georgia case to proceed.  We did

09:56:50 17   offer that compromise.  I think it was a fair compromise.

09:56:54 18   If our IPRs are granted, any one of them, we should pause

09:56:57 19   the Georgia case.  They said no.  Right?  I think that to me

09:57:01 20   demonstrates that they're trying to at least leave open the

09:57:04 21   possibility of gauging a tactical advantage in the Georgia

09:57:08 22   case.

09:57:08 23        THE COURT:  Okay.  Anything else?

09:57:11 24        MR. DESAI:  That's it, Your Honor.

09:57:12 25        THE COURT:  Anything you want to say in reply?

09:57:16 1    It's your motion, so I'll give you the last word.

09:57:19 2             MR. GOTTFRIED:  Thank you, Your Honor.

09:57:23 3             I think what I would like to do is to just

09:57:26 4    clarify a couple of things in response to a couple of

09:57:28 5    questions that you asked so that you understand exactly what

09:57:31 6    the state of play is.

09:57:32 7             THE COURT:  Right.  And I do want to understand

09:57:34 8    the position on the assertion that, MModal's position on the

09:57:42 9    assertion that because the claims if invalidated in the IPRs

09:57:46 10   would be done under a different standard in order to deal

09:57:49 11   with your counterclaims, we would still need to address

09:57:54 12   those issues.

09:57:55 13            MR. GOTTFRIED:  I'll answer that question first.

09:57:57 14   I think that's just wrong.  If they're invalid, they're

09:58:00 15   invalid, and that's the answer to that question.

09:58:02 16            THE COURT:  Okay.

09:58:03 17            MR. GOTTFRIED:  Second, you asked the question

09:58:05 18   about the art between the '034 and the '933.  So on the

09:58:17 19   '034, the Schulz reference and the Sumner reference were not

09:58:20 20   cited.  They were cited in the '933.  The '933 there was

09:58:26 21   literally no real activity in the Patent Office.  That

09:58:29 22   patent got issued almost immediately.  There was a rather

09:58:32 23   lengthy prosecution that I think the patent was issued 2012

09:58:41 24   on the '034.

09:58:42 25            But the Patent Office -- by the way, it's

09:58:43  1    interesting, it's is the same panel that is actually looking

09:58:46  2    at all three of these patents.  So the same panel that

09:58:50  3    instituted on the '034 and the '933, that's the exact same

09:58:55  4    panel and they looked quite closely at the fact that Schulz

09:59:00  5    was cited and Sumner was cited and they decided to use these

09:59:04  6    anyway and they explained that in detail.  That's an

09:59:07  7    important point again just so you understand what the facts

09:59:10  8    are with respect to that.

09:59:11  9         Lastly, the product that they accuse on to the

09:59:16 10    '295 patent was, in fact, issued and out publicly more than

09:59:22 11    five years, or about five years ago.  They have answered an

09:59:24 12    interrogatory answer saying they closely watch what their

09:59:29 13    competitors do and that they essentially knew that when it

09:59:32 14    happened.

09:59:32 15         THE COURT:  Is there anything to the argument

09:59:34 16    that the nature of the competition was changed over a period

09:59:39 17    of time?

09:59:40 18         MR. GOTTFRIED:  I don't think so.  I really

09:59:42 19    don't think that's correct.  I think if you want to know

09:59:44 20    what's happened here, our counterclaim tells that story.

09:59:47 21    These parties were competing side-by-side, neither at that

09:59:51 22    point was asserting patents.  They had the mal ware attack.

09:59:56 23    We were starting to take some business from them as a result

09:59:59 24    of that.  They were down for over a month, and all of a

10:00:02 25    sudden to stabilize the market, they brought these six

10:00:05  1    patents forward.  We obviously don't think there is much to

10:00:10  2    them.  They have conceded now as to two, there wasn't

10:00:14  3    anything to them.  We think there is a good chance that

10:00:16  4    three more will also be invalid.  That's really what's going

10:00:20  5    on here.  I think their delay is not excused by that at all.

10:00:23  6              THE COURT:  Okay.

10:00:24  7              MR. GOTTFRIED:  Thank you, Your Honor.

10:00:26  8              THE COURT:  So I want to just take a quick break

10:00:30  9    here and chat and think about these issues and then I will

10:00:34 10    come back.

10:00:36 11              (A brief recess was taken.)

10:18:09 12              THE COURT:  Please be seated.

10:18:12 13              Okay, counsel, thank you.  Thank you for the

10:18:14 14    argument.  After reading the briefs and the declarations and

10:18:17 15    hearing the argument today, I am prepared to rule on

10:18:22 16    MModal's motion to stay.  And I am granting the motion.

10:18:25 17              In addressing the motion to stay, the Court has

10:18:28 18    broad discretion, I think we have all agreed to that.  I

10:18:31 19    reached my decision by weighing the competing interests of

10:18:34 20    the parties in reviewing the factors that the Court

10:18:36 21    typically looks at in these circumstances.

10:18:39 22              Whether the stay will unduly prejudice or

10:18:42 23    present a clear tactical disadvantage to Nuance, the moving

10:18:47 24    party.  Whether the stay will simplify the issues in

10:18:51 25    question in the trial of the case.  And whether discovery is

10:18:52 1  complete and whether a trial date has been set.

10:18:54 2          I'm going to start with the last of those.  Here

10:18:58 3  fact discovery is ongoing and scheduled to conclude in the

10:19:01 4  middle of June.  The document portion of discovery appears

10:19:04 5  to have been maybe not completely, but largely completed,

10:19:10 6  but while a number of depositions have been noticed for the

10:19:13 7  upcoming months, it does not appear that any have yet

10:19:17 8  occurred.

10:19:18 9          Expert discovery does not begin until July

10:19:23 10 followed by case dispositive motions and then trial in April

10:19:27 11 of 2020, a year from now.  So it seems like there is still a

10:19:31 12 lot of work and expense on both sides as well as work for

10:19:34 13 the Court.  Some or all of that could be avoided potentially

10:19:37 14 based on the results of the IPR which has been instituted on

10:19:40 15 three of the four patents left in the case.  And there is a

10:19:43 16 risk that some of the discovery were I to let it go forward

10:19:47 17 would be wasteful.

10:19:48 18         It could, as MModal points out involve products

10:19:52 19 that may no longer be accused if certain patents drop out or

10:19:55 20 it could involve claims that are later changed or amended

10:19:58 21 during the IPR.

10:19:58 22         So when I consider the status of the case as

10:20:02 23 well as the status of the IPR which has already -- three

10:20:05 24 IPRs which have already been instituted, I think that factor

10:20:08 25 favors the stay.

10:20:09  1              As to simplifying the issues, the potential for

10:20:14  2  simplification here is substantial.  I understand that the

10:20:17  3  IPRs address only three of the four patents and ten of the

10:20:21  4  seventeen asserted claims, but that is well over half of the

10:20:24  5  claims at issue.  And it could be that one or more claims

10:20:27  6  will not survive the IPR.  That would reduce the number of

10:20:31  7  claims asserted and simplify the issues remaining.

10:20:35  8               And even if all of the claims emerge from the

10:20:38  9  IPR, the estoppel effects of the IPR, meaning that any

10:20:41 10  published prior art that was raised or reasonably could have

10:20:45 11  been raised or any inter partes review could not be asserted

10:20:49 12  as a basis for invalidity later in this litigation.

10:20:52 13               Additionally, the record in the PTAB and

10:20:54 14  statements about the prior art in claim construction that

10:20:56 15  will become part of the intrinsic record may be informative

10:20:59 16  if we need to go forward on the three patents.

10:21:01 17               I understand that Nuance asserts that because of

10:21:07 18  MModal's state law counterclaims, the Court may still need

10:21:10 19  to address validity in these issues and claim construction

10:21:14 20  issues on the currently asserted claims regardless of the

10:21:17 21  IPR results.  I have taken that into account and believe

10:21:20 22  that the risk of that adding issues to the case layer is

10:21:23 23  outweighed by the potential for simplification that I have

10:21:26 24  already noted.

10:21:27 25               So in this case, we cannot achieve maximum

10:21:30  1   simplification where all claims are determined to be

10:21:34  2   invalid, but even if just one does not survive, the case

10:21:37  3   will be somewhat simplified and that weighs in favor of a

10:21:40  4   stay.

10:21:40  5           And lastly, looking at prejudice, I have

10:21:44  6   considered the four factors the courts review in addressing

10:21:47  7   undue prejudice and tactical disadvantage.  With respect to

10:21:51  8   the timing of the request for review and the request for

10:21:54  9   stay, MModal acted with dispatch.  It had a year to file the

10:21:59 10   IPR petitions after the suit was filed.  It nevertheless

10:22:02 11   filed the petitions in June and July of 2018, approximately

10:22:06 12   three to four months into that year period.

10:22:08 13           Similarly, MModal moved for the stay within days

10:22:14 14   of institution of the IPRs.  This suggest that they, MModal,

10:22:18 15   has acted consistently and expeditiously.  It does not

10:22:22 16   suggest a tactical advantage in the timing of either its

10:22:26 17   request for IPR or to stay.

10:22:28 18           I understand that Nuance asserts that because

10:22:32 19   MModal has not agreed to stay the case in Georgia involving

10:22:36 20   MModal's patents, that suggest that the stay is really a

10:22:38 21   tactical ploy to move MModal's litigation ahead of this one.

10:22:43 22   I accept in connection with this motion that MModal's

10:22:46 23   refusal to agree to Nuance's representation is based on

10:22:50 24   other factors including that the status of institution on

10:22:53 25   any one or more of the IPRs in that case is still up in the

10:22:57 1    air.  And I assume that should the IPRs play out such that

10:23:01 2    MModal finds itself in a similar situation to Nuance here,

10:23:05 3    Nuance will point out how MModal's arguments may be

10:23:09 4    inconsistent with positions it takes before the Georgia

10:23:13 5    court if it has to address the stay there.

10:23:15 6         With respect to the status of the IPR

10:23:18 7    proceedings, the PTAB as instituted on all of the asserted

10:23:22 8    claims of all three patents, the final decision of the PTAB

10:23:26 9    is due by February 20th, 2020, which is before the currently

10:23:30 10   scheduled trial date in this case.  And as I noted before,

10:23:33 11   the decision of the PTAB may simplify issues and save

10:23:37 12   potentially wasted efforts.  The one patent that is not the

10:23:40 13   subject of the IPR is going to expire next week, so no

10:23:43 14   injunctive relief could be obtained on that patent past next

10:23:48 15   month and any damages regarding that patent will not

10:23:50 16   continue after its expiration whether the case is tried in

10:23:54 17   April of 2020 or somewhat later.

10:23:57 18        Finally, the parties' relationship.  They are

10:24:01 19   competitors and that weighs against a stay.  And while I

10:24:04 20   understand this is not necessarily a two-party market, there

10:24:08 21   does not seem to be any disagreement that the parties do, in

10:24:11 22   fact, compete.  But in evaluating prejudice, I am also

10:24:15 23   taking into account that the MModal products currently

10:24:19 24   accused of infringement have been sold since 2012, but

10:24:24 25   despite having patents at issue, Nuance took no action until

10:24:28 1  October of 2017.  Whatever the reasons were, it is a fact

10:24:33 2  that Nuance did not press this action for more than five

10:24:36 3  years, even though it apparently knew about its competitor

10:24:40 4  MModal's activities.  So while I am sensitive to the fact

10:24:43 5  that the parties are competitors, Nuance was willing to wait

10:24:47 6  to sue until 2017, and then to wait until a trial in 2020

10:24:52 7  for its patent rights to be adjudicated.

10:24:55 8        Taking all of this together, I find that Nuance

10:24:59 9  will not be unduly prejudiced or tactically disadvantaged by

10:25:03 10  the stay.  So for the same reasons, the case is stayed

10:25:08 11  pending final written decision of the last and now

10:25:09 12  instituted IPRs.  The parties should update me within a week

10:25:13 13  of any final decision by the PTAB as to patentability of the

10:25:17 14  claims.

10:25:17 15        If the asserted claims survive the PTAB

10:25:20 16  proceedings, we can discuss where things stand and whether

10:25:22 17  it would be appropriate at that point to expedite the

10:25:27 18  remaining proceedings so that trial and any delay in this

10:25:31 19  case can be minimized.

10:25:32 20        So that's my ruling on the motion to stay.

10:25:34 21        Are there any questions?

10:25:37 22        MR. DESAI:  One question, Your Honor.  Given

10:25:40 23  that we do have the one patent that's not an IPR and our

10:25:44 24  position that there will be a trial, I understand this Court

10:25:48 25  has a very busy docket.  Would it make sense to potentially

10:25:51  1    put a trial date on the calendar, if we're going to remove

10:25:55  2    the April 2020 calendar trial date, to put a trial date for

10:25:59  3    slightly later in 2020 so that we could once the IPRs are

10:26:02  4    concluded we could expeditiously move to have a trial?

10:26:07  5         THE COURT:  I think that would be better to do

10:26:12  6    once we know what the outcome is so that we can figure out

10:26:17  7    if we're talking about completing discovery and expert

10:26:21  8    discovery on four patents or one patent, and what the

10:26:25  9    products and the issues are.  But I will tell you that once

10:26:32 10    we get to that point where we understand it, I understand

10:26:35 11    that Nuance is going to want to move expeditiously and we

10:26:41 12    will do our best to fit you on the calendar sooner than we

10:26:44 13    otherwise would if the case was brought at that point.

10:26:48 14         MR. DESAI:  I guess the other case is the

10:26:50 15    Markman.  The parties are here and prepared.  Should we go

10:26:53 16    forward today?

10:26:53 17         THE COURT:  I was thinking about that.  I would

10:26:55 18    like to hear from you, but my take is that I expect that the

10:26:59 19    parties are going to have a lot to say about what happened

10:27:02 20    in the PTAB, or what will happen in the PTAB in arguing

10:27:08 21    claim construction.  And so it doesn't seem like a good use

10:27:12 22    of my time to hear the Markman issues at this point and then

10:27:17 23    risk having to have a second go around where we have new

10:27:21 24    arguments or perhaps new constructions that are proposed,

10:27:25 25    even the claims could be amended and there might be

10:27:28  1    additional issues.  So my thinking is that it doesn't seem

10:27:31  2    to make sense to go forward right now, but I'm willing to

10:27:34  3    hear from the parties on what your positions are on that.

10:27:37  4              MR. DESAI:  I think Nuance's position is that

10:27:40  5    with respect to the '295 patent, nothing is going to change,

10:27:42  6    and that's the bulk of the terms that are at issue today.  I

10:27:46  7    believe there is just two terms at issue in the other

10:27:50  8    patents.  I think for those terms as well, at least my

10:27:53  9    perspective having read the IPRs and knowing the positions

10:27:56 10    there, that those terms are not even at issue really in the

10:28:00 11    IPRs.  The issue in the IPRs is whether or not the prior art

10:28:04 12    discloses the use of two cursors.  Our position that it

10:28:08 13    discloses a single cursor, it's not a claim construction

10:28:11 14    issue.  There was no claim construction issues raised in the

10:28:14 15    petition.

10:28:15 16              So I think Nuance's position is that we're here,

10:28:17 17    we're prepared, and the arguments are not -- we don't

10:28:21 18    believe they're going to change, certainly not with respect

10:28:24 19    to the '295 patent.

10:28:25 20              THE COURT:  Okay.

10:28:27 21              MR. FITZPATRICK:  Thank you, Your Honor.  Two

10:28:32 22    points.  First of all, with respect to the '933 and the

10:28:37 23    '034, as Mr. Gottfried pointed out during his argument, the

10:28:41 24    PTAB has expressly invited claim construction regarding

10:28:45 25    meaning of cursors and whether or not cursors need to be

10:28:49  1    simultaneously displayed, so that is part of the issue with

10:28:52  2    respect to the '034.  And that's part of what has been

10:28:57  3    briefed between the parties.  In fact, as to the one

10:29:00  4    remaining claim term in dispute on the '034, that's really

10:29:04  5    the nub of the issue I would say is whether or not the two

10:29:07  6    cursors need to be displayed at the same time.  So that is

10:29:10  7    going to be addressed it appears by the -- in the IPR.

10:29:13  8            As to the '295, it seems to me if Your Honor is

10:29:18  9    going to stay the case, it doesn't make sense to proceed

10:29:23 10    with an argument.  It makes sense to as Your Honor said, see

10:29:27 11    what happens with the IPRs and then have perhaps a new

10:29:33 12    Markman date then at that point to address all of the

10:29:37 13    remaining claims, whatever they are, '295 plus if there are

10:29:41 14    any claims that remain from the other three patents.  That

10:29:45 15    would seem to us to be the more efficient way to proceed at

10:29:49 16    this point.

10:29:50 17            THE COURT:  Okay.  And I agree with that.  I

10:29:56 18    don't want to risk that we have Markman proceedings that if

10:30:01 19    we have to have multiple Markman decisions, multiple Markman

10:30:05 20    proceedings.  I do apologize that you came here today

10:30:09 21    prepared to argue those terms, but I was not sure what I was

10:30:12 22    going to do with the transfer motion until after I heard the

10:30:17 23    arguments here today.

10:30:19 24            So I think at this point we will recess.  You

10:30:23 25    can let me know when you hear anything from the PTAB, and to

10:30:27  1    the extent that there are claims that we need to deal with,

10:30:30  2    we will deal with those quickly.  Okay?  Thank you very

10:30:33  3    much.

          4                    (Court recessed at 10:30 a.m.)

          5

          6         I hereby certify the foregoing is a true and accurate
               transcript from my stenographic notes in the proceeding.
          7

          8                         /s/ Dale C. Hawkins
                                  Official Court Reporter
          9                        U.S. District Court

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25