IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 17-1484 (MN) ) |
| MMODAL LLC, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM ORDER

At Wilmington this 24th day of June 2021:

As announced at the hearing on June 22, 2021, IT IS HEREBY ORDERED that the disputed claim term of U.S. Patent No. 6,766,295 ("the '295 Patent") is construed as follows:

1. "first remote session" means "a remote session that is the first time the system obtains a particular speaker's speech" (claim 1)

The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim term (*see* D.I. 494, 495, 497 & 498), heard oral argument (*see* D.I. 503) and applied the following legal standards in reaching its decision:

I. **LEGAL STANDARDS**

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the

claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

## II. THE COURT'S RULING

The Court's ruling regarding the disputed claim term of the '295 Patent was announced from the bench at the conclusion of the hearing as follows:

> . . . We are here to construe an additional claim term "first remote session" in the '295 Patent. A dispute about that arose during expert discovery.
>
> I am prepared to rule on the dispute. In doing so, let me be clear that we have reviewed the papers submitted on this issue, we have re-reviewed the '295 Patent, and we have carefully considered all of the arguments made in the papers and here today. We are also applying the law that was set out in my prior order in this case.

3

Plaintiff proposes that the term be construed as "a remote session initiated by a first-time speaker that is dictating." Defendant proposes "a remote session that occurs before the subsequent session." I am going to construe "first remote session" to mean "a remote session that is the first time the system obtains a particular speaker's speech." And when I say this, I am not excluding a scenario where a person's speech has previously been obtained but their speaker-specific model has later been erased or lost. During the argument today, all parties agreed that in those circumstances when that speaker accesses the system again, it would be considered a first-time speaker.

I am not going to use the term first-time speaker in the construction as Plaintiff proposes because I think it gets confusing given that the claim references a "speaker" and the parties have agreed what that term means.[1]

The construction I have given is supported by the intrinsic evidence. Claim 1 uses the term "first remote session" to be followed by a "subsequent" remote session. The construction should give meaning to the word "first" in that claim. Defendant's proposal, however, does not give meaning to that word. Indeed, for Defendant's proposal, the claim would have the same meaning whether "first" was in the claim or not. Defendant conceded as much today.

Similarly, claim 2 supports that the word "first" in claim 1 must have some meaning. Claim 2 recites "[t]he method according to claim 1 further comprising a step of cumulatively modifying the speech recognition system according to speech samples obtained during one or more remote sessions with the speaker."[2] That suggests that additional remote sessions take place later – but it does not refer to those as "first remote sessions."

According to Defendant, each later remote session would be a "first" remote session so long as, at some point in time, another session came later. As such, there could be a second first remote session, a third first remote session and so on – with each subsequent remote session transforming into a "first" remote session when another session later occurs. That construction seems largely nonsensical.

---

[1]  (*See* D.I. 319 at 1).

[2]  ('295 Patent at Claim 2).

My construction is also supported by the specification. For example, in the Summary of the Invention, the patent states that the "invention is a method and apparatus for adaptation of a speech recognition system across multiple remote sessions with a speaker."[3] It continues to describe how it works, including that "[d]uring the first remote session, the speaker is uniquely identified and speech samples are obtained from the speaker"[4] before then going on to discuss preferred embodiments.

Similarly, in the Abstract, it addresses initiation of a first remote session with the speaker and states that "[d]uring the first session, the speaker is uniquely identified and speech samples are obtained from the speaker."[5]

And Figure 3, which the patent states "illustrates a flow diagram for adapting an acoustic model utilized for speech recognition in accordance with the present invention,"[6] depicts how "a determination is made as to whether the particular speaker is a first-time speaker or if samples of the speaker's speech have been previously obtained."[7]

As to Defendant's arguments regarding claim 8, which claims "[t]he method according to claim 1 wherein the speech recognition system is speaker-independent prior to the first remote session,"[8] I disagree that claim 1 is limited to a speaker independent system. For example, claim 1 permits the use of a cluster-specific system.

Similarly unavailing is Defendant's argument that claim 69 supports its construction. Claim 69, which depends from claim 1, recites "further comprising using the identification of the speaker to determine whether the speaker is a first-time speaker."[9] Although that claim does show that the patentee knew how to use the term

---

<sup>3</sup>   (*Id.* at 2:33-35).

<sup>4</sup>   (*Id.* at 2:39-41).

<sup>5</sup>   (*Id.* at Abstract).

<sup>6</sup>   (*Id.* at 3:14-16).

<sup>7</sup>   (*Id.* at 4:11-14).

<sup>8</sup>   (*Id.* at Claim 8).

<sup>9</sup>   (*Id.* at Claim 69).

"first-time speaker," claim 69 simply addresses how to determine whether a speaker is a first-time speaker.

Thus, as I said, I will construe "first remote session" to mean "a remote session that is the first time the system obtains a particular speaker's speech."

_____
The Honorable Maryellen Noreika
United States District Judge