

Kelly E. Farnan
302-651-7705
Farnan@rlf.com

September 1, 2021

**VIA CM/ECF**
The Honorable Maryellen Noreika                                **PUBLIC VERSION**
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

    Re:    *Nuance Communications, Inc. v. MModal LLC*, C.A. No. 17-1484-MN

Dear Judge Noreika:

    Per the Court's order (D.I. 513), MModal respectfully requests the Court strike certain improper opinions in the Supplemental Expert Report of Dr. Nathaniel Polish Regarding U.S. Patent No. 6,766,295 ("Polish Supplemental Report," Ex. 1), along with certain opinions in Dr. Prowse's supplemental report ("Prowse Supplemental Report," Ex. 2) that rely on Dr. Polish. The Court should exclude these opinions because they contradict the Court's construction of "first remote session" and are based on a construction that the Court expressly considered and rejected.

**I.    BACKGROUND**

    The asserted claims require certain activities to be performed during a "first remote session." *See, e.g.*, D.I. 1 Ex. D ("'295 Patent") cl. 1. The Court held a supplemental *Markman* hearing at which the Court construed "first remote session" to mean "a remote session that is ***the first time*** the system obtains a particular speaker's speech." D.I. 504 at 1.[1] The Court explained that its construction does not exclude the scenario where "a person's speech has previously been obtained but their speaker-specific model has later been erased or lost." *Id.* at 4. In reaching its construction, the Court underscored that the proper construction of "first remote session" should give meaning to the word "first." *Id.* Indeed, the Court expressly rejected, barring one particular carve-out, the possibility that there can be multiple "first remote sessions":

> According to Defendant, each later remote session would be a "first" remote session so long as, at some point in time, another session came later. **As such, there could be a *second* first remote session, a *third* first remote session and so on**—with each subsequent remote session transforming into a "first" remote session when another session later occurs. **That construction seems largely nonsensical.**

D.I. 504 at 4. Nuance agreed that an argument that "the fourth session or fifth, whatever, the hundredth session" can be a first remote session is "***clearly wrong if you look at the claim language***." Markman Hr'g Tr. (Ex. 3) at 13:22-14:2.

---

[1] All emphasis added unless noted otherwise.

Immediately following the Court's construction, the parties conducted supplemental expert discovery, where MModal's expert explained in detail that the accused products do not infringe because they first obtain a particular speaker's speech in an initial setup wizard almost identical to the "training sessions" that the '295 Patent distinguishes from regular dictation. *See* '295 Patent at 1:52-2:29, 2:42-44. In a stunning about-face, Nuance's expert Dr. Polish then opined that "there can be ***multiple*** 'first remote sessions' under the Court's construction until a speaker-specific modified speech recognition system is formed." Ex. 1 ¶ 115; *see also id.* ¶¶ 68, 103, 110, 118, 121 (similar). Dr. Polish explained that a "first remote session" includes *any* session for which "***a speaker-specific model does not exist*** for the speaker upon initiation" of the session. *Id.* ¶ 115. In his view, that is "the only *reasonable interpretation* of the Court's statement" that its construction does not exclude a scenario where "a person's speech has previously been obtained but their specific-specific [*sic*] model has later been erased or lost." *Id.* He has further limited the Court's construction to "the first time the system obtains a particular speaker's speech ***and the system does not have a speaker-specific model for that user when the session is initiated***." Nuance's damages expert relied on Dr. Polish's opinions to assess the amount of allegedly infringing use and the availability of non-infringing alternatives. *See, e.g.*, Ex. 2 ¶¶ 12-13, 18, 24-25, 40-41, 49-50; *see also* Prowse Dep. Tr. (Ex. 4) at 8:19-9:14, 10:16-11:22, 12:25-13:5, 14:13-21, 15:25-16:21, 18:25-19:9, 21:12-22:4, 23:17-18, 36:7-37:7, 42:5-17, 49:3-50:12.

Dr. Polish further testified that the Court's construction provides "no intrinsic limit" on the number of "first remote sessions," and that the only constraint is the adaptation of the speech recognition system to a particular user. *See, e.g.*, Polish Dep. Tr. (Ex. 5) at 335:3-13, 339:15-19, 355:21-356:3. Dr. Polish testified that a system could have 100,000 remote sessions prior to adaptation, and ***each and every one*** of those sessions would qualify as a "first remote session" under the Court's construction. *Id.* at 335:18-337:8. However, the experts agree that there are no facts in this case that involve the particular situation of the Court's carve-out, in which "a person's speech has previously been obtained but their speaker-specific model has later been erased or lost." Ex. 5 at 295:4-14; Ex. 6 at 266:18-24.

## II. NUANCE'S CONTRADICTORY CONSTRUCTION SHOULD BE EXCLUDED

The *Pennypack* factors weigh in favor of exclusion. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). **First**, Dr. Polish's **re**construction will disrupt the trial that is only one month away, and the "risk of confusing the jury is high when experts opine on claim construction." *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). "[E]xpert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact." *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017). Moreover, "[o]nce a district court has construed the relevant claim terms . . . [***n***]***o party may contradict the court's construction to a jury***." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Dr. Polish has used the additional scenario the Court identified—"where a person's speech has previously been obtained but their speaker-specific model has later been *erased* or *lost*"—to effectively rewrite the Court's construction. According to Dr. Polish, *any* remote session qualifies as a "first remote session" if a speaker-specific model does not exist at the time the session is initiated, regardless of the reason why, and regardless of whether that remote session is the first time—or the hundred-thousandth time—the system obtains a particular speaker's speech. *See, e.g.*, Ex. 1 ¶¶ 68, 115; Ex. 5 at 335:3-336:19.

The Honorable Maryellen Noreika
Page 3

Allowing Dr. Polish's opinions would place claim construction issues before the jury. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Furthermore, because the '295 Patent cannot be infringed without practicing the "first remote session" limitations under the all-elements rule, the asserted claims can only be infringed once. *See, e.g.*, *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("under this Court's case law, the patent is not infringed unless all the steps are carried out"). Dr. Polish and Dr. Prowse intend to tell the jurors otherwise, which is legal error. *See, e.g.*, Ex. 1 ¶¶ 110-11; Ex. 2 ¶¶ 12-13; Ex. 5 at 331:17-333:13.

**Second**, MModal is prejudiced by Nuance's shifting construction because MModal (as has this Court) already spent considerable time and resources litigating the construction of "first remote session." D.I. 376, 377, 447, 490, 492, 495, 496, 497, 499, 500, 503, 504. **Third**, the greater the prejudice, the less likely it is to completely cure the prejudice before trial. *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. 04-1436-LPS, 2012 WL 1015993, at *8 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013). Even if the Court were to extend the case schedule to yet again construe "first remote session," MModal's time, energy, and expenses will have already been wasted—and that prejudice cannot be cured.

**Fourth**, Nuance's about-face on this issue demonstrates bad faith. At the *Markman* hearing, Nuance opposed a construction that would allow for multiple first remote sessions. Ex. 3 at 13:22-14:2. Following the hearing, Nuance asserted that supplemental expert discovery was not necessary because "[t]he Court's construction of 'first remote session' of U.S. Patent No. 6,766,295 aligns with how Nuance's experts interpreted the term in their respective expert reports." D.I. 505 at 1. Despite these representations, Nuance reversed course just weeks later. The number of contradictory statements made by Nuance before and after the Court's construction is staggering. *Compare* Polish Sur-Reply Rpt. (Ex. 7) ¶¶ 38, 43, 44, 46; Ex. 3 at 13:13-14:2; D.I. 381 (Ex. 8) at 4; D.I. 447-1 (Ex. 9) at 25:14-24; D.I. 498 (Ex. 10) at 2, *with* Ex. 1 ¶¶ 41, 115; Ex. 5 at 328:7-18, 329:24-330:9, 335:3-13, 336:20-337:8, 339:10-19, 355:21-356:3 (highlighted).

**Fifth**, the importance of these opinions weigh in favor of exclusion because Nuance can continue to make arguments on other non-excluded grounds. *See Integra LifeSciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. 15-819-LPS-CJB, 2018 WL 3814614, at *3 (D. Del. Mar. 23, 2018). Dr. Polish has other arguments, for example that the initial setup wizard and subsequent dictation are both part of the same "session." Ex. 1 ¶¶ 59-62. **Sixth**, Nuance has not proffered an explanation for its attempt to reconstrue the term, other than relying on the Court's sole, specific carve-out, which does not apply to any facts in this case. *See* Ex. 11 (Aug. 18 email from C. Marando).

## III.  CONCLUSION

For the reasons set forth above, the Court should strike the infringement and non-infringing alternatives portions of the Polish Supplemental Report (Ex. 1 ¶¶ 41-42, 68, 103-07, 109-12, 115-19, 121), along with the portions of the Prowse Supplemental Report relying on the same (Ex. 2 ¶¶ 12-13, 18, 24-25, 40-41, 49-50).

The Honorable Maryellen Noreika
Page 4

                Respectfully,

                *Kelly E. Farnan*

                Kelly E. Farnan (#4395)

cc: Counsel of Record (via e-mail)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2021, I caused copies of the foregoing document to be served upon the following via e-mail:

| | |
|---|---|
| David J. Lender<br>Anish R. Desai<br>Sudip Kundu<br>WEIL GOTSHAL &MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000 | David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Stephanie E. O'Byrne (#4446)<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Tel: (302) 984-6000 |
| Stephen Bosco<br>Christopher T. Marrando<br>WEIL GOTSHAL &MANGES, LLP<br>2001 M Street, NW Suite 600<br>Washington, DC 20036<br>Tel: (202) 682-7000 | |
| Amanda Branch<br>WEIL GOTSHAL &MANGES, LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Tel: (650) 802-3000 | |
| David Greenbaum<br>NUANCE COMMUNICATIONS, INC.<br>1111 Macarthur Blvd.<br>Mahwah, NJ 07430<br>Tel: (201) 252-9100 | |

                                                    */s/ Kelly E. Farnan*
                                                    Kelly E. Farnan (#4395)
                                                    farnan@rlf.com